THE COUNTY OF COOK *et al.*, Plaintiffs-Appellants, *v.* THE ILLINOIS
DEPARTMENT OF LABOR *et al.*, Defendants-Appellees.

First District (4th Division)   No. 82—492

Opinion filed March 15, 1984.—Rehearing denied April 23, 1984.

JIGANTI, J., dissenting.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey and
Leonard N. Foster, Assistant State's Attorneys, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Michal T. Prousis, As-
sistant Attorney General, of counsel), for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

This appeal is brought by the County of Cook and the Cook County Department of Corrections (Department of Corrections), seeking reversal of a circuit court ruling which confirmed a decision of the Illinois Department of Labor (Department of Labor). A complaint for administrative review was filed in the circuit court by the Department of Corrections against the Department of Labor. The circuit court held that the Department of Labor correctly decided that section 604 of the Unemployment Insurance Act (the Act) (Ill. Rev. Stat. 1979, ch. 48, par. 434) was the applicable provision for determining the period of ineligibility for benefits.

The issue on appeal is whether the claimants' actions constituted misconduct or voluntary leaving of their jobs within the meaning of sections 601 and 602 of the Act (Ill. Rev. Stat. 1979, ch. 48, pars. 431, 432).

We affirm.

The defendants are the Department of Labor, four State officials in their official capacities, and 23 county correctional officers (claimants).

The summarized facts are that claimants were all employed as correctional officers at the county jail. A labor dispute arose between the claimants and the Department of Corrections. The dispute centered around demands for salary increases. On January 20, 1980, a majority of the correctional officers employed at the county jail failed to report for work. Some of the correctional officers reported that they were ill. A county investigator observed some of the claimants on picket lines outside correctional facilities in Cook County. On January 23, 1980, a circuit court judge issued a temporary restraining order against the work stoppage. On January 25, 1980, the judge ordered the correctional officers to return to work within 24 hours. They did not comply. On January 27, 1980, the county sheriff sent mailgrams to the correctional officers informing them that suspension or termination would result if they did not resume their duties by January 29, 1980.

The claimants did not return on the 29th of January. They began returning to work on January 30, 1980, at which time they were told that they were suspended, pending action by the Cook County Police and Corrections Merit Board.

The claimants thereafter applied for unemployment compensation benefits. The Department of Corrections objected on the ground that they had been guilty of misconduct and failure to report for work. Subsequently, all of the claims were consolidated for hearing by an ad-

judicator of the Department of Labor. The Department of Corrections asserted that the claimants were suspended for misconduct, voluntary leaving of their jobs, and other violations of departmental regulations. The parties agreed that the conduct complained of occurred between January 20 and 30, 1980.

At the conclusion of the hearing, the adjudicator determined that a labor dispute had occurred between the dates of January 20 and 30, 1980, and that the claimants were ineligible for benefits only during that period. The adjudicator's determination stated in part:

> "There was a labor dispute between the Department of Corrections, under the jurisdiction of the Cook County Board, and the correctional officers, over an increase in wages. The dispute was manifested by unsuccessful negotiations, a strike in the form of a 'sick-in' job action and picketing. This situation resulted in a substantial disruption of the jail's normal operations and constituted a stoppage of work under the provisions of Section 604.
>
> This determination supersedes all other determinations that may have been previously made on the separation issue. Consequently, any determinations made under Sections 601, 602 or 603 are hereby rendered null and void."

The Department of Corrections appealed from the adjudicator's ruling and contended that the claimants had been guilty of misconduct and had voluntarily left their jobs; therefore, they should be found ineligible for compensation indefinitely instead of only for the 10-day period determined by the adjudicator. Hearings on the appeal were held before a representative of the Director of the Department of Labor (the Director). Following those hearings, the Director's representative recommended that the adjudicator's determination be adopted. The Department of Corrections objected to the representative's recommendation, contending that the determination was made under the wrong statutory provision and, once again, asserting that the claimants were guilty of misconduct and had voluntarily left their jobs.

On August 12, 1980, the Director adopted his representative's recommendation as the official determination of the Department of Labor. The Department of Corrections then filed a complaint for administrative review in the circuit court of Cook County. On February 2, 1982, the circuit court confirmed the decision of the Department of Labor and this appeal followed.

The Department of Corrections contends that there was more than one basis for disqualifying the claimants from benefits; therefore, the Department of Labor as well as the circuit court erred in applying

only section 604 of the Act in determining that the claimants were ineligible for benefits only during the period from January 20 to 30, 1980. Sections 601 and 602 should have been applied because the claimants voluntarily left their jobs within the meaning of section 601(A) of the Act and participation in the strike was misconduct within the meaning of section 602(A) of the Act. Furthermore, a labor dispute involving correctional officers is unlike disputes between employers and employees in the private sector, and whether there was misconduct is a question of fact. Therefore, the Department of Labor was obligated to hold individual hearings for each claimant charged with misconduct or voluntarily leaving his job.

As noted, the parties agreed that the conduct in question occurred between January 20 and 30, 1980. However, the claimants deny that their actions constituted misconduct and voluntary leaving of their jobs. Instead, they assert that they were involved in a labor dispute and that section 604 of the Act governs the determination of whether they were eligible for benefits after January 30, 1980, when the labor dispute ended. Further, the Department of Labor's administrative review process showed concurrence with the claimants' assertion.

Section 601(A) of the Act states in pertinent part:

> "Sec. 601. Voluntary leaving. A. An individual who has been paid wages within each of at least 3 calendar quarters of his base period for insured work shall be ineligible for benefits for the week in which he has left work voluntarily without good cause and, thereafter, until whichever of the following shall first occur: (1) He has accepted bona fide work and earned remuneration for such work equal to at least 6 times his current weekly benefit amount; or (2) 12 consecutive weeks have elapsed which begin on the first day of the first week with respect to which he has filed a claim." Ill. Rev. Stat. 1979, ch. 48, par. 431.

■ We agree with the Department of Labor that on the facts presented in this case it cannot be said that the actions of the claimants constituted a voluntary leaving without good cause within the meaning of section 601(A). What occurred here does not constitute a severance of the employment relationship as contemplated by the statute.

Similarly, we reject the Department of Corrections' contention that section 602 of the Act should have been applied because the claimants' actions amounted to misconduct. Section 602(A) (Ill. Rev. Stat. 1979, ch. 48, par. 432) states in pertinent part:

> "Sec. 602. Discharge for misconduct—Felony. A. An individual who has been paid wages within each of at least 3 calendar

quarters of his base period for insured work shall be ineligible for benefits for the week in which he has been discharged for misconduct connected with his work and, thereafter, until whichever of the following shall first occur: (1) He has accepted bona fide work and earned remuneration for such work equal to at least 5 times his current weekly benefit amount; or (2) 10 consecutive weeks have elapsed which begin on the first day of the first week with respect to which he has filed a claim."

■ In order to accept the Department of Corrections' argument for applying section 602(A), a determination of who was at fault would have to have been made by the adjudicator or the Director's representative. The statutory provision governing eligibility for benefits does not contemplate assignment of fault. The Department of Labor must remain neutral in determining eligibility for benefits when a labor dispute is involved. See *Local 7—641 v. Department of Labor* (1983), 96 Ill. 2d 94, 449 N.E.2d 134; *Buchholz v. Cummins* (1955), 6 Ill. 2d 382, 128 N.E.2d 900.

Further, although the Department of Corrections charges the claimants with misconduct and voluntary leaving of their jobs, there is no explanation and the record does not disclose exactly what acts of misconduct were committed within the meaning of section 602.

■ As the Department of Labor points out, a labor dispute cannot qualify as "misconduct" or "voluntary leaving" simply because the employer chose to label it as such. We do not believe that mere participation in a strike constitutes misconduct within the meaning of the Act. Under section 604 of the Act, the claimants are ineligible for unemployment benefits during the dispute. However, once the dispute has ended, the claimants regain their eligibility. In this case, the dispute lasted from January 20 to 30, 1980, when the claimants returned to work. The hearings before the Department of Labor determined that the dispute ended on January 30, the same day that the claimants were suspended. They were therefore eligible for benefits after that date.

The argument offered by the Department of Corrections suggests that although the claimants are disqualified from eligibility for benefits during the pendency of the labor dispute, they are also disqualified under sections 601(A) and 602(A) after the dispute.

We agree with the Department of Labor that to reach this conclusion necessarily requires adjudication of the merits of the dispute. Such would undermine the principle of governmental neutrality which has consistently been applied. See *Buchholz v. Cummins* (1955), 6 Ill. 2d 382, 128 N.E.2d 900.

Under section 604, the claimants are only ineligible for benefits while the labor dispute continues. They become eligible once it ends. The term, " 'labor dispute' " is defined as " 'any controversy concerning wages, hours, working conditions or terms of employment.' " *Local 7—641 v. Department of Labor* (1983), 96 Ill. 2d 94, 98, 449 N.E.2d 134, 136.

The instant situation clearly fits this definition. Thus, the Department of Labor correctly found, and the circuit court properly confirmed, that there was a labor dispute and that the claimants were ineligible for benefits only during the period of the dispute. Further, there was no misconduct and voluntary leaving as asserted by the Department of Corrections; therefore, sections 601 and 602 of the Act were inapplicable and section 604 was properly applied in making the determination of eligibility.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, P.J., concurs.

JUSTICE JIGANTI, dissenting:

There are a number of ways in which an employee may be barred from receiving unemployment compensation under the Unemployment Insurance Act (Ill. Rev. Stat. 1979, ch. 48, par. 300 *et seq.*). Three of these disqualifications are when the employee is guilty of misconduct (Ill. Rev. Stat. 1979, ch. 48, par. 432); when he voluntarily leaves his employment (Ill. Rev. Stat. 1979, ch. 48, par. 431); and when he is involved in a labor dispute (Ill. Rev. Stat. 1979, ch. 48, par. 434). No one disputes the finding of the Department of Labor that a labor dispute existed between January 20 and January 30; therefore unemployment compensation benefits were not payable for that period.

The employees were subsequently suspended for their actions, and they sought benefits. The Department of Corrections contended that the employees were guilty of misconduct and of voluntary leaving during the labor dispute within the meaning of the act, which consequently bars them from receiving benefits. Specifically, the Department of Corrections contends that, as to misconduct, failing to report created an emergency situation in which there was a potential for destruction of property and loss of life. This has consistently been the Department's contention since the inception of this case. However, its contentions were never considered. The hearing officer only consid-

ered whether there was a labor dispute. In my judgment the Department of Corrections is entitled to a hearing as to whether there was misconduct and voluntary leaving.

It appears self-evident that misconduct is not forgiven simply because it arises during the course of a labor dispute. (*Linski v. Appeal Board* (1959), 358 Mich. 239, 99 N.W.2d 582.) If the employees here jeopardized lives and property, this fact should be considered to see if the employees' actions rise to the level of misconduct as contemplated by the statute.

The confusion in this case seems to center around the fact that the evidence before the Department of Labor was that the employees failed to report to work. The majority begs the question when it characterizes what occurred as "mere participation in a strike." The question is whether this was mere participation in a strike. If so, the employees may be subject to discharge under a collective bargaining agreement or under their rules but still may not be guilty of misconduct as contemplated in the statute. However, the charges by the county here are more serious. It contends that by striking, the employees jeopardized lives and property. Conduct which causes danger to either fellow employees or the community may be misconduct. In *Granite City Steel Division v. Board of Review* (1979), 68 Ill. App. 3d 264, 385 N.E.2d 931, *appeal denied* (1979), 75 Ill. 2d 590, the employee removed a red warning tag from a large piece of machinery and activated the power switch. The employee was aware of the potential danger to the lives of employees and to the property of the employer. This was found to be misconduct. Similarly, the facts here may demonstrate that the employees' conduct jeopardized both lives and property.

The Department of Corrections was entitled to present evidence of misconduct and voluntary leaving. These cases must be determined on their individual facts. (*Jackson v. Board of Review* (1984), 121 Ill. App. 3d 963.) I would reverse the matter and remand it to the Department of Labor for a hearing on the allegations raised by the Department of Corrections.