ODEAN GARNER, SR., Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

Second District    No. 2—93—1399

Opinion filed January 30, 1995.

Linda A. Rothnagel and Wendy S. Shparago, both of Prairie State Legal Services, Inc., of Waukegan, David Wolowitz, of Prairie State Legal Services, of Wheaton, and Prairie State Legal Services, Inc., of St. Charles, for appellant.

James E. Ryan, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, Richard Grenvich and Jessie Wang-Grimm, Assistant Attorneys General, of Chicago, and Elizabeth York, Assistant Attorney General, of Waukegan, of counsel), for appellees.

JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiff, Odean Garner, Sr., appeals the order of the circuit court of Lake County affirming the corrected supplemental decision (decision) of the defendants, the Department of Employment Security Board of Review *et al.* On November 8, 1991, a referee determined plaintiff was terminated for misconduct and was therefore ineligible for unemployment benefits under the Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 1992)). Defendants affirmed this determination on February 26, 1993. Plaintiff appealed under the

Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1992)). The circuit court affirmed defendants' decision on November 8, 1993. This appeal followed.

Plaintiff contends that (1) it was contrary to the manifest weight of the evidence for defendants to determine plaintiff was disqualified from receiving unemployment benefits on the basis of misconduct, (2) the disqualification decision was contrary to law, and (3) defendants' determination conflicts with the public policy of the State of Illinois. We reverse the circuit court's order affirming defendants' decision and find plaintiff was not disqualified because of misconduct.

Plaintiff was employed by A&M Janitorial Services (A&M) as a custodian/janitor. Various institutions contract out their janitorial services to A&M. A&M numbers among its clientele the Great Lakes Naval Training Center. A&M hired plaintiff as a full-time hourly employee on February 28, 1989. After several changes in job title, plaintiff settled into his position as a janitor at the Great Lakes Naval Training Center. He worked a 5 a.m. to 1 p.m. shift.

On various occasions plaintiff did not receive his paycheck in a timely manner. Plaintiff was paid twice a month. A&M told plaintiff he would be paid on either the first or the second and either the fifteenth or sixteenth of each month. In their decision, defendants found that throughout plaintiff's tenure his checks always arrived after the second and the sixteenth of each month. On several occasions plaintiff took a day off from work to travel to A&M's headquarters to pick up a replacement check. There is no evidence in the record that A&M supervisory personnel ever objected to plaintiff taking days off to pick up his check. Every time plaintiff personally picked up his paycheck, he was instructed to return any duplicate checks received by mail; no duplicate check was ever received.

Plaintiff's termination grew out of a series of events during the week of August 5, 1991, to August 9, 1991. Susan Joyner (Joyner) was employed by A&M as plaintiff's supervisor at the Great Lakes Naval Training Center. On August 5, 1991, plaintiff did not report to work. He had not received his paycheck. Joyner telephoned plaintiff at his home at 5:30 a.m. Plaintiff informed Joyner that he would not be coming in because he had not received his paycheck. Following this conversation, however, plaintiff reported for work at 6:24 a.m. In an affidavit filed before defendants, plaintiff stated that when he got to work he told Joyner he would not be in on August 6, 1991, unless he received his paycheck. On August 6, 1991, plaintiff neither went to work nor called Joyner. Joyner called plaintiff at his home at 5:45 a.m. Plaintiff repeated his explanation of the prior day. In her memorandum to the president of A&M (memorandum) dated August 9,

1991, Joyner states that on August 6, 1991, she "counseled Mr. Garner that he has gotten paid in the past and will be paid; that he was only hurting himself and his absenteeism would be reflected on his employment record." Plaintiff still had not received his paycheck on August 7, 1991. He did not report for work. In the memorandum Joyner states plaintiff left a message on the housekeeping office's answering machine on August 7, 1991, at 2:29 a.m. "Good morning Susan this is Odean. I won't be coming in today and I haven't received my check as of yet. Thank you." On August 8, 1991, plaintiff did not receive his paycheck and, therefore, did not report for work. Joyner's memorandum details an answering machine message left by plaintiff at 4:34 a.m. on August 8, 1991. "Yeah Susan this is Odean. I'm supposed to check on my check today. I'm supposed to call them back when they get into the office. If you need me you can give me a call. Thanks." Plaintiff neither reported for work nor telephoned in on August 9, 1991. At 2 p.m., one hour after his assigned shift ended, plaintiff received his check.

Plaintiff reported for work on August 12, 1991, and was given his termination papers for failing "to appear for assigned duties on three (3) consecutive working days (August 6-7-8, 1991), and according to A&M *** policies and procedures this infraction constitutes employee resignation or termination of employee by management." In its decision defendants found plaintiff's actions "were a wilful disregard of his employer's interests, and caused the employer harm." Defendants also determined plaintiff had been "warned that his job could be jeopardized, and chose to ignore his supervisor's pleas to report for work or at least give advance notice so a replacement could be obtained." Defendants affirmed the referee's finding that plaintiff had been fired for misconduct.

We first address the standards of review applicable to appeals under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1992)). We review the decision of the board of review, not the referee. (*Hoffmann v. Lyon Metal Products, Inc.* (1991), 217 Ill. App. 3d 490, 497.) Administrative agency findings and conclusions of fact are *prima facie* true and correct. (*Hoffmann*, 217 Ill. App. 3d at 497, citing *Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 510; 735 ILCS 5/3—110 (West 1992).) Our function is limited to determining whether the administrative agency's decision is against the manifest weight of the evidence. (*Hoffmann*, 217 Ill. App. 3d at 497, citing *Jackson*, 105 Ill. 2d at 513.) To reverse an agency's finding or conclusion of fact the reviewing court must determine that the opposite conclusion is clearly evident. (*Crowley v. Department of Employment Security Board of Review* (1989), 190 Ill.

App. 3d 900, 904.) An agency's conclusions may not be overturned merely because we find them unwise or their policy inappropriate. (*Crowley*, 190 Ill. App. 3d at 904.) This deference does not extend to an administrative agency's conclusions of law. (*Adams v. Ward* (1990), 206 Ill. App. 3d 719, 723.) If the agency's findings are not supported by substantial evidence, the agency will be reversed. *Hoffmann*, 217 Ill. App. 3d at 497.

■ The Act provides assistance to employees who are terminated for reasons other than misconduct. In light of this purpose, the Act must be liberally construed in favor of those applying for insurance benefits. (*Hoffmann*, 217 Ill. App. 3d at 498.) The Act provides in relevant part:

> "An individual shall be ineligible for benefits for the week in which he has been discharged for misconduct connected with his work and, thereafter, until he has become reemployed and has had earnings equal to or in excess of his current weekly benefit amount ***. *** For purposes of this subsection, the term 'misconduct' means the deliberate and willful *violation of a reasonable rule or policy* of the employing unit, governing the individual's behavior in performance of his work, provided such violation has *harmed* the employing unit or other employees or has been repeated by the individual despite a *warning or other explicit instruction* from the employing unit." (Emphasis added.) 820 ILCS 405/602(A) (West 1992).

■ An employee's action constitutes misconduct only if three requirements are fulfilled. The employee must have (1) engaged in deliberate and willful conduct, (2) in violation of a reasonable rule or policy regulating the performance of the employee's work, that (3) either (a) harmed the employer or a fellow employee or (b) was repeated in the face of an explicit warning or instruction to the contrary. If all three requirements are not met, the employee should not be discharged for misconduct. If misconduct is not the basis for discharge, the employee does not fall within section 602(A)'s disqualification.

■ Plaintiff contends that it was contrary to the manifest weight of the evidence for defendants to determine plaintiff was disqualified from receiving benefits on the basis of misconduct. We agree. Plaintiff asserts that A&M failed to demonstrate harm. The record contains no evidence that A&M either had suffered or would suffer an actual loss of property or other harm because plaintiff did not report for work from August 5, 1991, through August 9, 1991. Defendants' decision states that plaintiff's "actions were a wilful disregard of his employer's interests, and caused the employer harm." In their decision,

defendants neither point to evidence upon which this conclusion is based nor identify the nature of the harm.

The only evidence remotely related to harm is contained in Joyner's memorandum. In the memorandum Joyner states "I asked Mr. Garner that he call and inform me if he wasn't reporting for duty tomorrow so that I can schedule accordingly." There is no evidence that plaintiff's absence resulted in uncompleted work, loss of productivity, complaints by the Great Lakes Naval Training Center, or loss of business by A&M; in fact, there is no evidence that Joyner ever actually rescheduled. Based on the record it is clearly evident that harm was not shown within the meaning of section 602(A). We hold, therefore, that defendants' finding that plaintiff's actions harmed A&M was against the manifest weight of the evidence.

We do not reach the issue of whether section 602(A)'s misconduct definition requires a showing of actual, significant, and concrete injury, or if merely demonstrating a threat of future financial loss is sufficient. In *Hoffmann v. Lyon Metal Products, Inc.* (217 Ill. App. 3d 490), this court stated:

> "While we recognize that other courts have held that the threat of future financial loss caused by the conduct of an employee is harmful to an employer [citations], there was no testimony [in this case] that [the employer] had suffered or would suffer any loss of property or other harm due to [the employee's] violation of the *** policy." (*Hoffmann*, 217 Ill. App. 3d at 499.)

Section 602(A) requires that some type of harm be shown. In the present case, as in *Hoffmann*, the record contains no evidence of harm of any kind. Defendants' finding of harm, therefore, is without support. Because no evidence of harm was presented, it is unnecessary for us to determine the nature of the harm contemplated by section 602(A).

Even if plaintiff's actions did not harm A&M or another of their employees, plaintiff could have been discharged for misconduct if he repeatedly, deliberately, and willfully violated a reasonable rule or policy despite a warning or other explicit instruction from A&M. (820 ILCS 405/602(A) (West 1992).) Plaintiff also asserts that A&M failed to demonstrate the existence of a reasonable rule or policy under the circumstances presented and that A&M failed to establish any warning or explicit instruction to him before his termination. Even if the existence of a rule is undisputed, the real issue is whether or not the rule in question is a reasonable one governing the conduct or performance of an employee. (*Adams v. Ward* (1990), 206 Ill. App. 3d 719, 725.) Furthermore, a rule is not reasonable unless it provides guidelines that are or should be known by the employee. (*Ray v.*

*Department of Employment Security Board of Review* (1993), 244 Ill. App. 3d 233; *Farmers State Bank v. Department of Employment Security* (1991), 216 Ill. App. 3d 633; *Pesce v. Board of Review of the Department of Employment Security* (1987), 161 Ill. App. 3d 879, 882.) The warnings and instructions contemplated under section 602(A) must be both explicit and specific to the conduct for which the employee was discharged. (*Zuaznabar v. Board of Review of the Department of Employment Security* (1993), 257 Ill. App. 3d 354, 358.) In the decision, defendants state plaintiff "was warned that his job could be jeopardized." The decision does not specify the nature or origin of these warnings.

The record contains references to plaintiff's knowledge of the call-in policy for absences. However, this case is not about being absent because of illness, death in the family, injury related to work or even just "playing hooky." Plaintiff did not report to work when he had not been paid in a timely manner for work that was performed over two weeks prior to these absences. Plaintiff acknowledged that he had understood that he would not receive his paychecks on the first and fifteenth of the month because A&M mailed the checks on the first and fifteenth of the month. Furthermore, plaintiff acknowledged that on previous occasions his paychecks arrived even later than the second and the sixteenth of the month or that they never arrived by mail when he picked them up from the office downtown. However, the record does not establish that plaintiff agreed to work indefinitely while A&M organized its financial matters in order to post employee paychecks. Nor does the record contain any evidence that A&M paid wages in a fashion "in accordance with the law and customs in the trade or in the establishment." (Department of Unemployment Security Manual of Benefit Precedent Decisions Transcripts, VL 500.55, No. 246 (1992).) We acknowledge that requiring an employee to call in to report an absence is a reasonable policy, but we do not believe that it is reasonable for an employee to be required to call in and report his own absence when that absence relates to the chronic nonpayment of wages as identified by this record.

Finally, the record contains no evidence that plaintiff was ever explicitly warned that his absence while waiting for his paycheck would not be tolerated. The only evidence bearing on the question of warning or other explicit instruction is, again, contained in Joyner's memorandum. Joyner states that she "counseled" plaintiff that his refusal to come to work without being paid only hurt him and would be reflected on his record. Joyner may have subjectively intended this "counseling" to be a warning that plaintiff's absences would not be tolerated. Section 602(A), however, requires warnings and instruc-

tions to be issued explicitly. (820 ILCS 405/602(A) (West 1992).) The record supports a finding that Joyner's "counseling" was a veiled warning or instruction; the record also supports a finding that her statement was ambiguous. Neither finding is sufficient under section 602(A). Similarly, the record contains no evidence Joyner or any other employee of A&M ever explicitly instructed plaintiff to report for work rather than remain home and wait for his paycheck. Based on the record it is clearly evident that plaintiff was not explicitly warned or instructed within the meaning of section 602(A). We hold, therefore, that defendants' findings that plaintiff was warned his job could be jeopardized and that Joyner "pleaded" with plaintiff to report for work were against the manifest weight of the evidence.

Because plaintiff neither harmed A&M, nor violated a reasonable rule or policy of the employing unit, nor was given explicit warnings or instructions concerning his actions, he was not fired for misconduct. We find plaintiff was not disqualified from receiving unemployment benefits because of misconduct as defined by section 602(A) of the Act (820 ILCS 405/602(A) (West 1992)). In light of this determination, we do not reach plaintiff's other contentions.

The judgment of the circuit court of Lake County is reversed, and the cause is remanded to the Board of Review for the entry of a new decision consistent with this order.

Reversed and remanded.

McLAREN, P.J., and COLWELL, J., concur.