GRIGOLEIT COMPANY, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

Fourth District   No. 4—95—0905

Argued May 14, 1996.—Opinion filed July 8, 1996.

Frederic L. Kenney and Jerrold H. Stocks (argued), both of Winters,

Featherstun, Gaumer, Kenney, Postlewait & Stocks, of Decatur, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Morton E. Friedman, Assistant Attorney General, of counsel), for appellees.

JUSTICE GARMAN delivered the opinion of the court:

Plaintiff, the Grigoleit Company, brought this action for administrative review of a decision by the Board of Review of the Illinois Department of Employment Security (Board) that claimant, Karen Smith, was eligible for unemployment insurance benefits. The circuit court affirmed the Board's decision and plaintiff appeals, arguing claimant is disqualified from receiving benefits under either section 601(A) or section 602(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/601(A), 602(A) (West 1994)). We disagree and affirm.

Smith was employed as a production worker by plaintiff from March 10, 1984, to November 7, 1994. It is undisputed that in her 10 1/2 years as an employee of plaintiff, Smith missed only five days of work and never received a disciplinary warning of any kind. On November 3, 1994, plaintiff posted a notice informing all production workers that they would be required to work on Saturday, November 5, 1994. Although Saturdays were not normally scheduled workdays, plaintiff's employment policy required employees to report to work according to any posted schedule changes. Smith reported to work on November 5, 1994, but early in her shift, the production line malfunctioned and Smith was told it would not become operational again that day. Smith's supervisor then asked her to sweep the work area. Smith's response to her supervisor was that she had come to work to run the production line but not to clean, and that she wanted to go home. Smith's supervisor told her she would lose the day's pay if she left work; nonetheless, Smith chose to leave work.

On Monday, November 7, 1994, Smith reported to work and worked her full scheduled shift. After finishing her shift, Smith was instructed to pick up a letter in the management office. The letter informed Smith that by leaving work early on November 5, 1994, and failing to provide notification of her leave, she had committed misconduct and had forfeited her work schedule. The letter stated that if Smith wanted to continue working for plaintiff, she was to provide a written explanation of her conduct by 10 a.m., November 9, 1994.

On November 9, 1994, Smith delivered a statement to plaintiff's office explaining the events of Saturday, November 5, 1994. Later

that day, Sharon LeCates, a resources and compliance manager for plaintiff, notified Smith that her letter was not sufficient to reinstate her and that, according to company policy, before she would be scheduled for work, she had to submit an "offer to work" to the company. Smith never submitted an offer to work to plaintiff.

On November 10, 1994, Smith filed a claim for unemployment insurance benefits. On December 2, 1994, a claims adjudicator determined Smith was ineligible for benefits under sections 500(C) and 601(A) of the Act (820 ILCS 405/500(C), 601(A) (West 1994)). On December 6, 1994, Smith filed a request for reconsideration of the claims adjudicator's determination with the Illinois Department of Employment Security. On December 27, 1994, a hearing was held before a referee.

At the December 27, 1994, hearing, the issues were (1) whether Smith voluntarily left her job without good cause attributable to her employer, which would disqualify her from receiving benefits under section 601(A) of the Act; or (2) whether Smith was discharged for misconduct connected with her work, which would disqualify her under section 602(A) of the Act; and (3) whether Smith was able to, available for, and actively seeking work during a two-week period under review, as required by section 500(C) of the Act.

Smith, her supervisor, and LeCates testified at the hearing regarding the events of November 5, 1994, and the subsequent actions taken by plaintiff and Smith. The referee issued his decision on December 28, 1994. The referee found Smith did not anticipate that she would be discharged if she left work early on November 5, 1994, but only that she would be docked a day of pay if she did so. Thus, the referee determined Smith did not resign from her job, constructively or otherwise, when she left work on November 5, 1994, and was not disqualified from receiving benefits under section 601(A) of the Act.

The referee further determined that in leaving work early on November 5, 1994, Smith had not engaged in an act of misconduct and therefore was not disqualified from receiving benefits under section 602(A) of the Act. Finally, the referee determined Smith was ineligible for benefits for the period November 6, 1994, through November 19, 1994, because she had not been available for, nor actively seeking, employment during that time.

In January 1995, plaintiff filed an appeal of the referee's decision with the Board. The Board determined that by refusing to schedule Smith to work after November 7, 1994, and by requiring her to submit an offer to work without the guarantee that such an offer would be accepted, plaintiff caused Smith's separation from work. Ac-

cordingly, the Board concluded section 601(A) of the Act was inapplicable to Smith's claim for benefits.

Having affirmed the referee's finding that Smith did not voluntarily leave her employment, the Board then examined whether Smith had engaged in misconduct under section 602(A) of the Act and found that she had not. In support of its finding, the Board noted Smith had never received any disciplinary warnings prior to November 5, 1994. Finally, the Board affirmed the referee's finding regarding Smith's ineligibility under section 500(C) of the Act for the period November 6, 1994, through November 19, 1994.

Plaintiff filed a complaint for administrative review in the circuit court on June 9, 1995, alleging Smith was disqualified from receiving benefits based on sections 601(A) and 602(A) of the Act, and contending the Board's decision otherwise was contrary to the law and the evidence presented.

A hearing on the complaint was held on October 20, 1995, and the circuit court issued its decision on October 23, 1995. The circuit court determined the evidence supported the Board's findings and affirmed the Board's decision.

■ The receipt of unemployment insurance benefits is conditioned on the claimant satisfying the eligibility requirements of the Act. 820 ILCS 405/100 et seq. (West 1994); *Burke v. Board of Review, Illinois Department of Labor*, 132 Ill. App. 3d 1094, 1099, 477 N.E.2d 1351, 1355 (1985). Section 601(A) of the Act provides, in relevant part, that a claimant "shall be ineligible for benefits for the week in which he [or she] has left work voluntarily without good cause attributable to the employing unit." 820 ILCS 405/601(A) (West 1994). Plaintiff's first argument on appeal is that by leaving work on November 5, 1994, and failing to seek future assignments of work in accordance with company policies, Smith voluntarily left her employment without good cause attributable to her employer and is therefore disqualified from receiving unemployment benefits under section 601(A) of the Act.

Plaintiff cites the cases of *Collier v. Department of Employment Security*, 157 Ill. App. 3d 988, 510 N.E.2d 623 (1987), and *Popoff v. Department of Labor*, 144 Ill. App. 3d 575, 494 N.E.2d 1266 (1986), for the proposition that "[a]n employee who leaves work because of dissatisfaction with the type of work or hours assigned does not leave for good cause and is not entitled to benefits." In each of those cases, the court held the employee who voluntarily quit his or her job due to dissatisfaction with the reduction of his or her work hours had not left for good cause attributable to the employer. However, in neither of those cases was there doubt that the employee voluntarily chose to

leave his or her employment; the only issue was whether the employee voluntarily left *for good cause attributable to the employer.* Yet the issue here is whether Smith "voluntarily left" her employment or was discharged by plaintiff. Thus, the only authority offered by plaintiff in support of its position is unpersuasive on the issue before us.

Plaintiff asserts Smith voluntarily left her employment because under company policies, which Smith acknowledged having received, a failure to be present to perform assigned work, absent proper notification of leave, constitutes a voluntary quit. The Board argues Smith did not voluntarily leave her employment, but was discharged by plaintiff, making section 601(A) of the Act inapplicable to her claim for benefits.

In attempting to establish that Smith voluntarily quit her job, plaintiff relies almost exclusively on its own employment policies and offers little authority, statutory or otherwise, in support of its position. Under plaintiff's policies, Smith's departure from work on November 5, 1994, is interpreted as a voluntary quit. However, it is the Act and the cases interpreting it which control eligibility for benefits, not plaintiff's internal employment policies. *Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor*, 37 Ill. App. 3d 704, 706, 346 N.E.2d 399, 401 (1976).

■ Whether an employee voluntarily discontinued her employment is a question of intent and is to be determined from the totality of the evidence presented. *Dunn v. Director, Department of Labor*, 131 Ill. App. 3d 171, 174, 476 N.E.2d 77, 79-80 (1985). Under section 3—110 of the Administrative Review Law, an administrative agency's findings concerning factual questions are *prima facie* true and correct and should not be disturbed on review unless they are contrary to the manifest weight of the evidence. 735 ILCS 5/3—110 (West 1994); *Garland v. Department of Labor*, 104 Ill. 2d 383, 392, 472 N.E.2d 434, 437 (1984); *Peterson v. Board of Trustees of the Firemen's Pension Fund*, 54 Ill. 2d 260, 262-63, 296 N.E.2d 721, 723 (1973); *Burke*, 132 Ill. App. 3d at 1100, 477 N.E.2d at 1356.

■ Smith's testimony and conduct strongly indicate she did not intend to terminate her employment with plaintiff on November 5, 1994, nor did she anticipate that her actions would result in her discharge. Smith had never before left work early; thus, it would be reasonable to infer she was unfamiliar with the company procedure for doing so and would not have anticipated that she would be discharged for leaving early, having informed her supervisor of her intentions. Smith reported for work as scheduled on Monday, November 7, 1994, and worked her full shift. This demonstrated that she did not believe

she had terminated her employment with plaintiff and was not aware that her actions of November 5, 1994, had constituted a breach of company policy punishable by discharge. When notified that she was to provide a written explanation of the events of November 5, 1994, Smith submitted her explanation in a timely manner, further demonstrating her intention to maintain employment with plaintiff.

Plaintiff also argues that its position Smith voluntarily quit her job is supported by the fact that she never submitted an offer to work as instructed. As described in the employee manual, an offer to work must be presented by an individual seeking employment with plaintiff and must set forth any requirements or conditions the individual wishes to place on her employment. The heading for the section in the employee manual addressing offers to work is "Offers to Work from Former Employees" and that section applies only to individuals who have voluntarily quit their jobs. Thus, Smith's failure to submit an offer to work must be deemed to have occurred subsequent to her termination of employment and cannot properly be considered in a determination of whether she voluntarily quit her job. Even if it were a factor in that determination, given that Smith did not intend to quit when she left work early on November 5, 1994, it is understandable that she was confused as to what she was required to do to obtain reassignment of a work schedule.

The record supports the Board's conclusion that plaintiff refused to schedule Smith to work after November 7, 1994, as a result of her actions on November 5, 1994. The Board correctly determined that, in so doing, plaintiff discharged Smith. For the above reasons, we concur in the Board's decision that section 601(A) of the Act is not applicable to Smith's claim for unemployment benefits.

■ The second issue presented is whether the Board erred in finding Smith did not engage in statutory misconduct. A discharge disqualifies an employee from receiving unemployment compensation if it is based on behavior that amounts to "misconduct" within the meaning of section 602(A) of the Act. *Jackson v. Board of Review of the Department of Labor*, 105 Ill. 2d 501, 511, 475 N.E.2d 879, 884 (1985). Section 602(A) of the Act defines "misconduct" as:

> "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." 820 ILCS 405/602(A) (West 1994).

In reaching its decision, the Board was required to make conclusions of both fact and law. See *Perto v. Board of Review*, 274 Ill. App. 3d 485, 490, 654 N.E.2d 232, 236 (1995).

Whether an employee's conduct amounts to statutory misconduct is a question of law and therefore subject to *de novo* review. See *Perto*, 274 Ill. App. 3d at 490, 654 N.E.2d at 236. Plaintiff alleges the following actions by Smith constituted misconduct under its policies: (1) she refused to do the work assigned her, and (2) she failed to follow the procedures detailed in the employee manual to notify her employer she was leaving work early. As discussed above, however, whether an individual is eligible for unemployment benefits is determined by the Act, not the employer's own policies.

■ To prove statutory misconduct, the employer must demonstrate (1) the employee engaged in wilful and deliberate conduct; (2) in violation of a reasonable rule or policy regulating the performance of the employee's work; and (3) the violation harmed the employer or a fellow employee; or (4) similar violations were repeated despite explicit previous warnings or instructions. *Garner v. Department of Employment Security*, 269 Ill. App. 3d 370, 374, 646 N.E.2d 3, 6 (1995).

Thus, to establish Smith was disqualified from receiving unemployment benefits, plaintiff had to demonstrate that in telling her supervisor she did not want to clean, agreeing to a loss of pay for the day, and going home, Smith wilfully violated a reasonable rule of plaintiff which harmed plaintiff or another employee.

■ Plaintiff contends first that Smith violated one of its rules by refusing to perform the work assigned her. It is undisputed that Smith was dissatisfied with the nature of the work assigned her and refused to do it. However, the evidence indicated that when Smith told her supervisor she wanted to leave early on November 5, 1994, her supervisor did not tell her she could not leave, but merely conditioned her leaving on the loss of pay for that day. The supervisor's placing conditions on her leaving was not the same as telling Smith she could not leave. Thus, Smith had reason to believe that she could leave if she accepted the preconditioned loss of pay and, we conclude, did not deliberately or willfully violate any rule or policy of plaintiff by leaving work.

Further, plaintiff did not demonstrate how Smith's decision to go home without pay, once it was apparent the production line would not be functioning all day, harmed plaintiff or another employee, as required by the Act. Although the statutory element of harm can be substituted with proof that the employee has repeatedly violated the rules of her employer and been warned about such behavior, the evidence established plaintiff had never before taken disciplinary action against Smith and had never issued any warnings to her regarding leaving work early. For this reason, the present case is distinguishable from *Nichols v. Department of Employment Security*, 218 Ill. App. 3d 803, 578 N.E.2d 1121 (1991), cited by plaintiff.

Plaintiff further asserts Smith violated its rules by failing to follow the proper procedure for leaving work once one's shift has begun. Plaintiff's employee policies and procedures are contained in its employee manual, the most recent of which plaintiff issued to Smith in August 1993. The manual states that an employee who wants to leave work once a shift has begun must notify plaintiff "verbally" that she is leaving, and why, by calling an "800" number within four hours after the beginning of the shift. On November 5, 1994, Smith informed her supervisor she wanted to leave work and was told if she did so she would lose the day's pay. Smith accepted this consequence and went home. Although she did not telephone the 800 number as prescribed in the employee manual, she did provide her employer, through her supervisor, with verbal notice that she was leaving work. Smith's supervisor did not then instruct her to call the 800 number. If the supervisor had, and Smith had refused to comply, that may properly be viewed as a wilful and deliberate violation of a reasonable company rule. However, Smith could reasonably have believed that her discussion with her supervisor constituted sufficient notice to her employer that she was leaving work early. Smith's mere failure to telephone the 800 number did not amount to a wilful and deliberate violation of a company rule.

While Smith's failure to strictly follow plaintiff's procedures may have justified her discharge, plaintiff failed to prove Smith engaged in "misconduct" as it is defined by section 602(A) of the Act. Therefore, Smith is not disqualified under section 602(A) of the Act from receiving unemployment benefits. See *Pesce v. Board of Review of the Department of Employment Security*, 161 Ill. App. 3d 879, 882, 515 N.E.2d 849, 851 (1987). Accordingly, the decision of the circuit court is affirmed.

Affirmed.

COOK, P.J., and McCULLOUGH, J., concur.