ABIGAIL ARROYO, Plaintiff-Appellant, v. LYNN DOHERTY, Director, Department of Employment Security, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—97—3985

Opinion filed May 28, 1998.

Timothy Huizenga, Maureen E. Terjak, and Heather E. Ross, all of Legal Assistance Foundation, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Royce A. White, Assistant Attorney General, of counsel), for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

Was Abigail Arroyo (Arroyo) fired from her job as a cashier at Wally's Kosher Deli or did she quit? She was denied unemployment benefits because the Department of Employment Security Board of Review (Board) decided she left her job without good cause. The circuit court upheld the Board's finding. We believe the record demonstrates she was fired. For that reason we reverse the Board's finding and remand for a new hearing into whether she was fired for misconduct that makes her ineligible for benefits.

FACTS

In 1995, Arroyo began working as a cashier at Wally's Kosher Deli (the deli). While employed at the deli, Arroyo became pregnant. On June 14, 1996, approximately eight months into her pregnancy, Arroyo experienced complications and was admitted to Illinois Masonic Hospital, where she gave birth to a stillborn child. Arroyo was discharged from the hospital on June 18, 1996, with orders from her doctor to refrain from work for six weeks.

On July 23, 1996, Arroyo returned to the deli to get her last paycheck and inform her employers, the deli's owners Harry Friedman and Steve Brin, she could resume work. Brin told Arroyo she was fired.

Arroyo filed for unemployment benefits, and the deli filed its objections. Specifically, Brin alleged:

"The claimant, Abigail Arroyo was on our schedule to work as of 6/14/96, she again appeared at our store to pick up last check for the week of 6/3/96 on July 24th[,] 1996. We did not hear from Miss Arroyo for almost 40 days[.] If someone who is employed by you does not tell us [sic] what happened to themselves [sic] for 40 days we assume they have *terminated voluntarily*. She was a no show for more than 1 month." (Emphasis added.)

The claims adjudicator interviewed Arroyo. The notes from this interview indicate Arroyo called Brin on June 15 and June 24, 1996. The notes also show Arroyo said, "I kept in contact with him [Brin]." The claims adjudicator interviewed Brin as well. The notes from this interview echo Brin's earlier claim that he did not hear from Arroyo during her absence.

On August 16, 1996, the claims adjudicator found Arroyo eligible for benefits from July 28 to August 10, 1996 (13 days) because she had not engaged in any misconduct. The deli appealed. The appeal fact sheet from the claims adjudicator's finding noted the "NATURE OF APPEAL" as "MC" (presumably "misconduct") and the "SECTION OF LAW/RULE" as "602(A)." However, the notice of hearing described one of the issues on appeal as follows:

"WHY WAS CLAIMANT SEPARATED FROM EMPLOYMENT WITH THE ABOVE EMPLOYER? IF *DISCHARGED*, WAS IT FOR MISCONDUCT IN CONNECTION WITH THE WORK? IF CLAIMANT *LEFT VOLUNTARILY*, WAS IT FOR GOOD CAUSE ATTRIBUTABLE TO THE EMPLOYER? SEE IUIA [Illinois Unemployment Insurance Act] SEC. 601 AND 602." (Emphasis added.)

On October 1, 1996, the parties appeared before referee William P. Naurich for a hearing. At the beginning of the hearing, the referee said, "Since it [the hearing] arises under 602(A) of the Act, I'll be asking Mr. Friedman questions first."

When asked whether he claimed Arroyo was discharged or quit, Friedman said, "My contention was that she didn't show up." However, he immediately changed his contention: "She was dis— discharged." Later, he said, "The reason [she was discharged] was is [sic] that she didn't show up to work for the last six weeks."

Friedman also noted Arroyo had received at least one warning for failing to call when she expected to miss work. Friedman admitted he eventually heard rumors from other deli employees about Arroyo. However, Friedman said, "I didn't know that she lost her baby for the first four weeks [of her absence], and I figured that we were at least

owed a phone call from he[r] to tell us what the story was." Friedman repeated he did not hear from Arroyo between June 16, 1996—when her mother left a voice mail message that Arroyo was "not feeling well" and would not work that day—and July 23, 1996—when Arroyo arrived at the deli to retrieve her last paycheck.

The referee next questioned Arroyo. Arroyo said, "I—I would say that I was discharged." She said Brin fired her, but did not give any reasons. Arroyo speculated as to a possible reason: "[T]hey [Friedman and Brin] had to hire their two daughters." Arroyo conceded she waited six weeks before returning to the deli, but insisted "I kept in contact with them."

Arroyo said she told Brin about her health problems when she returned and emphasized, "I called him before that" on June 19. Arroyo recounted a conversation with Brin:

"To call he said the 23rd when I picked up my check. Call me in two weeks and see if I have anything open for you. I said well I need my job Steve. I'm coming back. I'm okay now. It was a very hard, tough thing for me what happened to me."

The referee finally questioned Brin. Brin asserted he never spoke with Arroyo on June 19 and actually did not speak with her at all between June 13, the last day she worked at the deli, and July 23, 1996, the day she came for her last paycheck. Brin said he first heard about Arroyo's problems "through the grapevine" four weeks after she stopped working. Brin admitted he hired relatives to replace Arroyo, but noted "[t]hey are only here one day a week." Brin noted Arroyo had at least one warning for a "No call, no show." There is no evidence of a written company policy concerning the consequences of a failure to call.

Near the end of the hearing, the following exchange occurred between the referee and the deli's representative:

"THE REFEREE: I'll indicate I don't have any further questions of either party. Since it's the employer's appeal, Ms. Devanna, would you like an opportunity for a closing statement?

MS. DEVANNA: No, just other then [sic] to say that perhaps under the circumstances a 601(A) might be appropriate.

THE REFEREE: Had they testified to that, but as you know under the law, the employer must be aware that's the reason.

MS. DEVANNA: (INAUDIBLE) because of her circumstances, personally, I wouldn't want to see her—

THE REFEREE: —Ms. Devanna, had the employer said that they—they were aware of that reason, I would consider it—

MS. DEVANNA: Okay.

THE REFEREE: But they didn't testify to that. They said they never heard from her."

On October 2, 1996, the referee found Arroyo "was absent due to the stillborn birth and recovery for a period of six weeks." The referee also found Arroyo had notified the deli of her medical condition and her doctor's advice not to work during her recovery. The referee concluded Arroyo was "discharged for reasons other than misconduct" and section 602(A) of the Illinois Unemployment Insurance Act (820 ILCS 405/602(A) (West 1992)) did not disqualify her from receiving benefits.

The deli appealed this decision to the Board of Review, contending:

> "IN THIS *MISCONDUCT* CASE, THE CLAIMANT ABANDONED HER JOB. WITHOUT NOTIFICATION TO THE EMPLOYER AS TO THE REASON FOR, NOR THE LENGTH OF HER INTENDED ABSENCE, THE CLAIMANT WAS NO CALL, NO SHOW, FOR SIX WEEKS." (Emphasis added.)

The deli contended that Arroyo's testimony was contradictory as to whether she notified the deli about her absence, but that the deli owners testified consistently that Arroyo never called about her absence.

On December 20, 1996, the Board of Review reversed the referee's decision. The Board of Review said, "[W]e do not concur in the referee's analysis of the evidence presented to him at the hearing, and replace all his findings with findings of fact of our own, based on the evidence." Primarily, the Board of Review disagreed with the referee's finding that Arroyo notified the deli about her absence. According to the Board of Review, after Arroyo's mother left a message on June 16, 1996:

> "[N]either the claimant, nor anyone on her behalf, notified the employer of her continuing absence or the necessity therefor. All of the employer's 'information' regarding this unfortunate set of circumstances came through the 'grape vine.' The claimant contends she called the employer but: (a) her evidence was vague and indefinite as to when such contact occurred; and (b) she offered no corroboration, such as an itemized telephone record or telephone bill to support her contention.
>                                  * * *
> *** In addition, there is likewise no evidence that she was advised to leave her work by a licensed and practicing physician."

After discussing the differences between section 601(A) and section 602(A) of the Act, the Board of Review concluded Arroyo voluntarily left the deli without good cause under section 601(A). The Board of Review found: "Section 602A of the Act does not apply."

On January 24, 1997, Arroyo filed an administrative review action in the circuit court of Cook County. On September 25, 1997, the

circuit court upheld the Board of Review's decision. While the trial court believed the referee was in a better position than the Board of Review to judge the credibility of the witnesses, the court lamented its deferential role:

> "Unfortunately, at the present time, the Board of Review is charged with the legal responsibility of independent fact finder, and its factual determinations may not be rejected by a reviewing court unless they are against the manifest weight of the evidence."

Because some testimony supported the Board of Review's decision, the court found this decision was not against the manifest weight of the evidence. The court affirmed the Board of Review.

This appeal followed.

DECISION

■ The purpose of the Illinois Unemployment Insurance Act (the Act) (820 ILCS 405/100 *et seq.* (West 1992)) is to provide benefits to unemployed workers "to alleviate the hardships of involuntary unemployment." *Nichols v. Department of Employment Security*, 218 Ill. App. 3d 803, 809, 578 N.E.2d 1121 (1991). However, a worker applying for such benefits has only a conditional right to receive them: "[T]he Act is not intended to benefit those who are unemployed on account of their own misdeeds." *Nichols*, 218 Ill. App. 3d at 809. The burden of proving eligibility rests with the claimant. *Collier v. Department of Employment Security*, 157 Ill. App. 3d 988, 991, 510 N.E.2d 623 (1987).

■ The Act offers judicial review in accord with the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1992)). See 820 ILCS 405/1100 (West 1993). While "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct" (735 ILCS 5/3—110 (West 1992 & Supp. 1997)), a reviewing court may revisit the agency's conclusions of law *de novo* (*Nichols*, 218 Ill. App. 3d at 809-10).

■ Our function with respect to the agency's fact findings is to determine whether they were against the manifest weight of the evidence. *Abrahamson v. Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992); *Grant v. Board of Review*, 200 Ill. App. 3d 732, 734, 558 N.E.2d 438 (1990). To reverse the agency's decision as against the manifest weight of the evidence, we must conclude:

> " '[A]ll reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding, would agree that the finding is erroneous' [citation], and that the opposite conclusion is clearly evident." *O'Boyle v. Personnel Board*, 119 Ill. App. 3d 648, 653, 456 N.E.2d 998 (1983).

A reviewing court may not reweigh evidence, judge credibility of witnesses, or resolve conflicts in testimony. *Nichols*, 218 Ill. App. 3d at 809. If the record contains some competent evidence to support the agency's decision, it should be affirmed. *Abrahamson*, 153 Ill. 2d at 88.

■ The Act provides:

"An individual shall be ineligible for benefits for the week in which he has left work voluntarily without good cause attributable to the employing unit ***.

B. The provisions of this Section shall not apply to an individual who has left work voluntarily:

1. Because he is deemed physically unable to perform his work by a licensed and practicing physician *** and he has notified the employing unit of the reasons for his absence." 820 ILCS 405/ 601(A), 601(B)1 (West 1992).

The Act also provides:

"An individual shall be ineligible for benefits for the week in which he has been discharged for misconduct connected to his work ***. *** For purposes of this subsection, the term 'misconduct' means deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." 820 ILCS 405/602(A) (West 1993).

■ Section 601(A) and section 602(A) in effect create two groups of claimants ineligible for benefits: those who left work voluntarily without good cause (section 601(A)), and those who were fired for misconduct (section 602(A)). Section 601(B), read in concert with section 601(A), provides instances where the claimant has good cause to leave. See *Flex v. Department of Labor*, 125 Ill. App. 3d 1021, 466 N.E.2d 1050 (1984). "Good cause" is a fact issue focusing on the conduct of the employer. *Pearson v. Board of Review*, 194 Ill. App. 3d 1064, 1069, 551 N.E.2d 1021 (1990). A claimant's intent to leave is also a fact issue. *Hawkins v. Department of Employment Security*, 268 Ill. App. 3d 927, 930, 645 N.E.2d 428 (1994); *Dunn v. Director, Department of Labor*, 131 Ill. App. 3d 171, 174, 476 N.E.2d 77 (1985).

Arroyo asserts these sections are mutually exclusive: Section 601(A) concerns voluntary leaving, and section 602(A) concerns involuntary leaving, or discharge, for misconduct. Arroyo contends the Board of Review overstepped its authority when it based its ruling on section 601(A) after the referee already had concluded this section was not raised by either party. Without notice that this issue would arise before the Board of Review and without an opportunity to be heard on this issue, Arroyo contends she was deprived of due process.

Arroyo's due process contention must fail. The deli's objections to Arroyo's benefits specifically mentioned voluntary termination: "If someone who is employed by you does not tell us [*sic*] what happened to themselves [*sic*] for 40 days we assume they have terminated voluntarily." Additionally, while the appeal fact sheet from the claim adjudicator's finding specified section 602(A), the notice of hearing mentioned both section 601 and section 602.

■ Although Arroyo should have expected to address section 601(A), her failure to prepare a response to allegations of voluntary leaving is understandable. "Whether an employee voluntarily discontinued her employment is a question of intent and is to be determined from the totality of the evidence presented." *Grigoleit Co. v. Department of Employment Security*, 282 Ill. App. 3d 64, 69, 669 N.E.2d 105 (1996). Simply put, the record contains no evidence to prove Arroyo intended to leave her job at the deli.

Instead, the uncontroverted evidence shows Arroyo's mother called the deli on the first night of Arroyo's hospitalization, Arroyo's doctor advised her to minimize her activity, Arroyo came back to the deli after six weeks, and the deli fired her. Specifically, the referee asked Friedman, "Is it the employer's contention the claimant was discharged from her job, or that she quit?" Friedman responded: "My contention was that she didn't show up." After the referee pursued an answer to his question, Friedman soon admitted Arroyo was "dis— discharged." We take Friedman at his word—she was discharged. In addition, the deli, in its notice to the Board, referred to "misconduct," a section 602(A) descriptive term.

An important statutory issue arises: Can the Board of Review rely on section 601(A)'s voluntary leaving provision when the employee claiming unemployment benefits in fact was discharged?

*Grigoleit Co.*, 282 Ill. App. 3d 64, 669 N.E.2d 105, indirectly addresses this issue. In *Grigoleit Co.*, an employer notified its production staff they would have to work a certain Saturday. As required, Karen Smith, a production staff member, reported to work. When Smith's production line malfunctioned, Smith's supervisor asked her to clean the work area. Smith refused, saying she had come to run the production line and not to clean. Smith left work early. The following Monday, the management staff asked Smith for a written explanation of her conduct. Smith submitted a letter, which the management staff judged insufficient to retain Smith. Smith filed for unemployment benefits.

The Board of Review decided the employer caused Smith's separation from work and thus section 601(A) did not apply. The Board considered Smith's case solely under section 602(A). Both the trial

and this court agreed with the Board's determination the employer had discharged Smith, making section 601(A) inapplicable. *Grigoleit Co.*, 282 Ill. App. 3d at 70.

Like Smith, Arroyo was fired for leaving work. While Smith left work during her shift and Arroyo did not come to work at all, this distinction does not affect the obvious conclusion: if a claimant is fired by her employer, she did not voluntarily leave her position.

Other Illinois cases have addressed both section 601(A) and section 602(A). See *Chicago Transit Authority v. Didrickson*, 276 Ill. App. 3d 773, 659 N.E.2d 28 (1995); *County of Cook v. Illinois Department of Labor*, 123 Ill. App. 3d 68, 462 N.E.2d 576 (1984). See also *Jones v. Department of Employment Security*, 276 Ill. App. 3d 281, 285, 657 N.E.2d 1141 (1995) ("given that there was a leave of absence and that plaintiff [the claimant] attempted to return to work but was discharged by [the employer] upon her return, we find the termination of employment to have been involuntary and attributable to the [employer]").

In *Didrickson*, a temporary summer employee sought unemployment benefits. The court, after addressing section 601(A), simply observed:

> "[T]he record contains no allegations or evidence that [the claimant] had committed misconduct connected with the work. Therefore, Smith was not subject to the disqualification imposed under section 602(A) of the Act." *Didrickson*, 276 Ill. App. 3d at 779-80.

In *County of Cook*, the employer raised section 601(A), section 602(A), and section 604, which governs unemployment benefits during labor disputes, against a striking employee. The court said:

> "[T]here was no misconduct and voluntary leaving as asserted by the [employer]; therefore sections 601 and 602 of the Act were inapplicable and section 604 was properly applied in making the determination of eligibility." *County of Cook,* 123 Ill. App. 3d at 73.

■ These cases arose from fact contexts different from Arroyo's case. While some scenarios exist in which voluntary leaving and misconduct could serve as alternate reasons to deny unemployment benefits, they would all bear some resemblance to *Didrickson* and *County of Cook*: voluntary leaving with some expectation of resuming work. Once an employee quits, an employer cannot discharge her. Once an employee is fired, an employer cannot say the employee quit.

■ The Board of Review did not apply section 602(A), and instead relied on section 601(A), answering in the affirmative the fact question of the claimant's intent to leave. However, the Board's legal conclusion that section 602(A) did not apply was wrong, and the fact

question it did address was irrelevant. The Board never considered whether the facts of Arroyo's case showed any misconduct under section 602(A). Several cases would have provided guidance: *Garner v. Department of Employment Security*, 269 Ill. App. 3d 370, 374, 646 N.E.2d 3 (1995); *Zuaznabar v. Board of Review*, 257 Ill. App. 3d 354, 357, 628 N.E.2d 986 (1993); and *Adams v. Wood*, 206 Ill. App. 3d 719, 724-25, 565 N.E.2d 53 (1990); and see *Jackson v. Board of Review*, 105 Ill. 2d 501, 511-12, 475 N.E.2d 879 (1985).

On the facts before the Board of Review, even if Arroyo did not call the deli before July 23, 1996, she still may not have engaged in disqualifying misconduct. That is a fact issue for the Board to determine. The referee found Arroyo did not engage in misconduct under section 602(A). While the referee's finding does not bind the Board of Review, the Board must consider the findings of the referee as part of the record. *Gregory v. Bernardi*, 125 Ill. App. 3d 376, 381-82, 465 N.E.2d 1052 (1984); see *Adams*, 206 Ill. App. 3d at 727 ("The referee, as the only one taking testimony, was in the best position to judge witness credibility").

## CONCLUSION

The Department of Employment Security Board of Review erred in applying section 601(A) to this case. We further find the Board incorrectly concluded section 602(A) did not apply. We remand for a determination of whether Wally's Kosher Deli has proved Arroyo engaged in misconduct under section 602(A), sufficient to justify her discharge and therefore deny benefits. See 735 ILCS 5/3—112 (West 1992 & Supp. 1997); *cf. Kreiser v. Police Board*, 69 Ill. 2d 27, 370 N.E.2d 511 (1977).

Reversed and remanded.

CERDA, P.J., and SOUTH, J., concur.