# Illinois Official Reports

## Appellate Court

---

**_Persaud v. Department of Employment Security_, 2019 IL App (1st) 180964**

---

| | |
|---|---|
| Appellate Court Caption | PATRICIA PERSAUD, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, THE DIRECTOR OF EMPLOYMENT SECURITY BOARD OF REVIEW, and NORTHWESTERN MEMORIAL HEALTHCARE INC., Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-18-0964 |
| Filed | April 17, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-L-50087; the Hon. James M. McGing, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Patricia Y. Persaud, of Evanston, appellant _pro se_.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Caleb Rush, Assistant Attorney General, of counsel), for appellees. |

Panel                    JUSTICE ELLIS delivered the judgment of the court, with opinion. Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    The Department of Employment Security Board of Review (Board) found plaintiff, Patricia Persaud, ineligible to receive benefits under the Unemployment Insurance Act (Act) (820 ILCS 405/100 *et seq.* (West 2016)). The circuit court affirmed that decision. We affirm as well.

¶ 2                                    BACKGROUND

¶ 3    Persaud was employed as a patient service representative by Northwestern Memorial Healthcare, Inc. (Northwestern), from December 10, 2012, until September 27, 2017, when she was terminated. Following her termination, Persaud filed a claim for benefits under the Act. Northwestern filed a response, claiming that Persaud was discharged for misconduct under the Act. A claims adjudicator determined that Persaud was not discharged for misconduct and thus was not ineligible for benefits. Northwestern then filed a notice of reconsideration and appeal. The case was referred to a referee, who held a telephonic hearing on December 8, 2017.

¶ 4    At the hearing, Oneida McEachin testified that she was Persaud's practice manager at Northwestern and that she personally terminated Persaud. She stated that Persaud was terminated for "violations of our rules for personal conduct"—specifically, "[d]isobeying instructions, procedures or policies, whether through neglect, procrastination or deliberate disobedience and deliberately refusing to obey the orders or instructions of a manager, person in charge or security officer." Elaborating, McEachin explained that on September 27, 2017, she told Persaud that she needed to speak to her about a disciplinary action report and a performance improvement plan. According to McEachin, Persaud said that she did not want to discuss those topics with McEachin and refused to meet with her.

¶ 5    McEachin testified that she told Persaud that "this is not a choice" and that they needed to speak. McEachin then called the human resources department, which recommended to McEachin that she try speaking to Persaud again. Thereafter, McEachin testified that she

> "went to [Persaud] again and I asked her that she needs to come speak to me, that part of her job is that she speak with me today, um, that I needed to give her this disciplinary action. I've already asked her three times, um, and she refused again to speak with me. She said that she wasn't gonna speak with me. Um, I called my Human Resources Department again. I told them what was happening. Then I, um, went back to her, you know, through their direction and I told her that she needed come speak with me, I needed to give her this disciplinary action report and speak about her performance improvement and if she continued to refused to speak to me, she would be terminated. She again said that she was not gonna speak with me, that I didn't have the right to terminate her."

¶ 6     McEachin then asked Persaud "one final time" to " '[p]lease come speak with me or you will be terminated.' " After Persaud again refused, McEachin told her that she was "terminated effective immediately."

¶ 7     McEachin explained that September 27 was not the first time that Persaud had refused a request to meet to discuss her performance issues. On September 25, McEachin had asked to speak to Persaud about the same performance and disciplinary issues; in response, Persaud "said she wasn't gonna speak to us." At that time, McEachin told Persaud that "we really need to talk about this" and that her refusal "would have consequences in the future." According to McEachin, Persaud "acknowledged she understood" and "said that that was okay." Persaud then told McEachin that she was "feeling really stressed out" about an upcoming medical leave and that she preferred to speak with McEachin when she returned from leave. McEachin told Persaud that it was important to talk before she left for leave "so she knew what *** her expectations were when she came back."

¶ 8     Persaud testified that she had major surgery scheduled for October 2 and was going to be on short-term disability. She explained that she refused to meet with McEachin because she was "so stressed out" about her upcoming surgery. She admitted that she walked out when McEachin asked to meet with her, but she maintained that she did so because she was upset and crying, and that, throughout the encounter, she repeatedly asked to postpone the meeting. Persaud acknowledged that McEachin told her on September 27 that she would be fired if she refused to meet. But according to Persaud, McEachin made that statement "only when she came up to me at the front desk" while Persaud was helping a coworker check in some patients. Persaud admitted that she walked out of McEachin's office when McEachin asked to meet with her.

¶ 9     On December 11, 2017, the referee found that Persaud's actions were "an error in good faith" and that she was not terminated for misconduct. Northwestern then appealed to the Board. On February 1, 2018, the Board issued a final administrative decision finding that Persaud had been discharged for misconduct. Relying on section 602(A)(5) of the Act (820 ILCS 405/602(A)(5) (West 2016)), the Board noted that the Act defines "misconduct" to include circumstances where an employee "refuses to follow an employer's reasonable and lawful instruction" and that "[t]here is no requirement that the refusal be willful or deliberate, nor does the law require proof that the employer was harmed or the conduct was repeated, or that the conduct have violated a reasonable work-related rule."

¶ 10    Continuing, the Board explained that Persaud

        "was discharged for refusing several times to meet with her manager and HR for a performance discussion and a performance improvement plan. The manager made the request on 09/25 and 09/26, and even after the claimant was told that failure to do so would result in her discharge, she still refused. Because the refusal was not due to lack of ability, skills, or training for the individual required to obey the instruction or the instruction would result in an unsafe act, the claimant's refusal to obey the employer's reasonable and lawful instruction, constitutes misconduct as defined under Section 602A(5) of the Act."

¶ 11    On February 22, 2018, Persaud filed a complaint for administrative review in the circuit court. On May 9, 2018, the circuit court affirmed the Board's decision. This timely appeal followed.

¶ 12                                          ANALYSIS

¶ 13          On administrative review, we review the decision of the Board, not the circuit court. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 11. There are three types of questions a court may encounter when reviewing an administrative decision: questions of fact, questions of law, and mixed questions of fact and law. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). Our standard of review differs depending on the question presented. *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005) (*AFSCME*).

¶ 14          An agency's factual findings and conclusions are "deemed *prima facie* true and correct." *Cinkus*, 228 Ill. 2d at 210. When examining an agency's factual findings, we will not reweigh the evidence or substitute our judgment for that of the agency. *Id.* We merely determine whether the agency's findings of fact are against the manifest weight of the evidence. *Id.* An agency's factual findings are against the manifest weight of the evidence only "if the opposite conclusion is clearly evident." *Id.*; *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16.

¶ 15          On the other hand, legal determinations by the Board are reviewed *de novo*. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 463 (2009); see *Cinkus*, 228 Ill. 2d at 210 ("[A]n agency's decision on a question of law is not binding on a reviewing court.").

¶ 16          Mixed questions of fact and law are those in which " ' "the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." ' " *Cinkus*, 228 Ill. 2d at 211 (quoting *AFSCME*, 216 Ill. 2d at 577, quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)). Mixed questions of fact and law are subject to reversal only when they are " 'clearly erroneous.' " *AFSCME*, 216 Ill. 2d at 577 (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001)). A decision is clearly erroneous "when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.* at 577-78.

¶ 17          Here, the Board's determinations that Persaud's supervisor instructed her to meet with her and that Persaud refused are questions of fact subject to the manifest-weight standard of review. Whether the Board correctly interpreted the term "misconduct" in the Act is a legal question subject to *de novo* review. And whether the Board correctly determined that Persaud was discharged for misconduct, by applying the facts to the law, presents a mixed question that we will not disturb unless clearly erroneous.

¶ 18          We first consider whether the Board's factual finding that Persaud refused McEachin's requests for a meeting was against the manifest weight of the evidence. McEachin's testimony provided the Board with more than ample evidence to support its finding that Persaud was repeatedly asked, and repeatedly refused, to meet with McEachin to discuss her performance issues. And notably, Persaud never denied the fact that she refused to meet with McEachin. Instead, throughout the hearing, Persaud stated that she thought that, in refusing McEachin's request and instead seeking to postpone the interview until after she returned from medical leave, she was in essence requesting a "reasonable *** accommodation." The Board's factual findings were not against the manifest weight of the evidence.

- 4 -

¶ 19        We next consider whether the definition of misconduct that the Board applied was correct. As noted, the Board, citing section 602(A)(5) of the Act, applied the following definition of misconduct:

> "The term 'misconduct' means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit.

> The previous definition notwithstanding, 'misconduct' shall include any of the following work-related circumstances: 5. Refusal to obey an employer's reasonable and lawful instruction, unless the refusal is due to the lack of ability, skills, or training for the individual required to obey the instruction or the instruction would result in an unsafe act.

> The new subsection (A)(5) imposes a lower threshold in situations where an employee refuses to follow an employer's reasonable and lawful instruction. There is no requirement that the refusal be willful or deliberate, nor does the law require proof that the employer was harmed or the conduct was repeated, or that the conduct have violated a reasonable work-related rule."

¶ 20        Applying *de novo* review, we find that the Board's definition and interpretation of the word "misconduct" was legally correct. Under section 602 of the Act, employees who were discharged for "misconduct" are disqualified from receiving employment benefits. Section 602 defines "misconduct" as follows:

> "For purposes of this subsection, the term 'misconduct' means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit. *The previous definition notwithstanding, 'misconduct' shall include any of the following work-related circumstances*:

> * * *

> 5. *Refusal to obey an employer's reasonable and lawful instruction*, unless the refusal is due to the lack of ability, skills, or training for the individual required to obey the instruction or the instruction would result in an unsafe act." (Emphases added.) 820 ILCS 405/602(A), (A)(5) (West 2016).

¶ 21        The Board's determination, that section 602(A)(5) contains "no requirement that the refusal be willful or deliberate, nor does the law require proof that the employer was harmed or the conduct was repeated, or that the conduct have violated a reasonable work-related rule," was perfectly consistent with the statute's plain text. True, the *general* definition of "misconduct" requires a deliberate or willful state of mind, repeated conduct, and proof of harm to the employer, but the statute continues to provide that, "notwithstanding" that previous definition, certain actions are deemed to be misconduct *per se*. *Id.* § 602(A). The word "notwithstanding" in this context means independent of the previous definition, "in spite of" the previous definition, an "exception" to the general definition. See *Waliczek v. Retirement*

*Board of the Firemen's Annuity & Benefit Fund*, 318 Ill. App. 3d 32, 36 (2000); *Toner v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 259 Ill. App. 3d 67, 70 (1994).

¶ 22 Subsection (A)(5) of section 602 thus gives an independent example of one particular type of "misconduct"—"Refusal to obey an employer's reasonable and lawful instruction." 820 ILCS 405/602(A)(5) (West 2016). That "misconduct" does not require willfulness, harm to the employer, or repetition. The only exceptions to a finding of "misconduct" under this specific definition are (1) if the reasonable and lawful instruction could not be followed by the employee due to lack of ability, skills, or training or (2) if the instruction would require an unsafe act. *Id.* (And of course, as subsection (A)(5) says, the instruction would have to be "reasonable and lawful" in the first instance. *Id.*) The Board correctly interpreted the relevant statute.

¶ 23 Finally, we consider whether the Board's determination that, under the facts of the case, Persaud's actions met the definition of "misconduct" was clearly erroneous. We find no clear error. Persaud disobeyed her employer's instruction. The instruction was not unlawful. And it was reasonable. In construing the word "reasonable" in section 602(A)'s general misconduct definition, courts have found that an instruction is "reasonable" if it "appropriately relate[s] to the workplace" and concerns standards of behavior that an employer has a right to expect from an employee. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 827 (2009); *Livingston v. Department of Employment Security*, 375 Ill. App. 3d 710, 716 (2007). Here, McEachin's request was clearly reasonable, as it related directly to Persaud's work; McEachin wanted to discuss, among other things, a work improvement plan for Persaud.

¶ 24 Nor, for good reason, does Persaud try to argue that any of the exceptions under subsection (A)(5) would apply—that the request to meet with Persaud was a task that Persaud was unable to perform due to a lack of ability, skills, or training or that meeting with McEachin would be unsafe. We find no clear error in the application of the facts to the law.

¶ 25 A few final points. First, in her appellate brief, Persaud raises an issue regarding the manner in which the circuit court handled her case. Any such complaint is irrelevant to our decision, as on administrative review, we review the decision of the Board, not the circuit court. *Petrovic*, 2016 IL 118562, ¶ 11.

¶ 26 Second, in her appellate brief and in a letter to the circuit court, Persaud has attempted to introduce a number of factual matters that do not appear in the administrative record. Among them: (1) that McEachin "subsequently asked to resign and now no longer works at Northwestern Medicine. I understand that this was a direct result orchestrated by the physicians we worked with because of her conduct[ ]" and (2) that McEachin had been "hassling" Persaud for several months and was biased against her.

¶ 27 But our review is limited to the record before us; neither the trial court nor this court may consider additional evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992); 735 ILCS 5/3-110 (West 2016) (on administrative review, "[n]o new or additional evidence in support of or in opposition to any *** decision of the administrative agency shall be heard by the court"). Because this information was not presented during the administrative proceedings below, we cannot consider it.

## CONCLUSION

¶ 29 The Board's decision is affirmed.

¶ 30 Affirmed.