2026 IL App (1st) 250519-U

FIRST DIVISION
March 23, 2026

No. 1-25-0519

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ERIN KUHFUSS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 L 50345 |
| | ) | |
| THE DEPARTMENT OF EMPLOYMENT SECURITY, | ) | |
| RAYMOND MARCHIORI, in His Official Capacity as | ) | |
| Director of Employment Security, BOARD OF REVIEW | ) | |
| of The Department of Employment Security, | ) | |
| | ) | |
| Defendants-Appellants | ) | Honorable |
| | ) | Daniel P. Duffy, |
| (The Law Office of William Wolf, LLC, Defendant). | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the decision of the Board of Review of the Department of Employment security disqualifying the employee from unemployment benefits for misconduct connected to the work; after the employer gave the employee a reasonable instruction, with clearly communicated expectations, the employee refused to follow that instruction and chose to do other work; the failure to follow the instruction was not due to lack of training, ability, or any potential for harm and meets the definition of misconduct under the 2016 amended act; the Board's finding that the employee was terminated for misconduct is not clearly erroneous.

¶ 2    Plaintiff, Erin Kuhfuss, filed a complaint in the circuit court of Cook County for

administrative review of a decision by defendants, the Board of Review (Board) and The

Department of Employment Security (Department). Defendant, The Law Office of William Wolf, LLC (Wolf), plaintiff's former employer, appeared before the Board and was a party to the complaint for administrative review in the circuit court. The Board of Review's decision affirmed the decision by a referee (who affirmed the claim's adjudicator's determination) finding plaintiff ineligible for unemployment benefits pursuant to the Unemployment Insurance Act (Act). The Board found that plaintiff was discharged for misconduct as defined in section 602(A)(5) of the Act and is therefore not eligible for benefits. On administrative review the circuit court reversed the decision by the Board.

¶ 3       After all defendants filed a notice of appeal from the circuit court's decision, Wolf entered into a settlement agreement with plaintiff. As part of the settlement Wolf agreed not to pursue its appeal. Wolf notified this court of its intent not to pursue its appeal. Wolf's notice stated that plaintiff and Wolf agreed their settlement would have no impact on the right of the remaining defendants, the Board and the Department, to pursue their appeals. The Board and the Department informed Wolf and plaintiff they intended to pursue the appeals.[1]

¶ 4       For the following reasons, we reverse the circuit court and affirm the Board.

¶ 5                                  BACKGROUND

¶ 6       Plaintiff, Erin Kuhfuss, began employment with Wolf as an attorney in July 2021. On May 5, 2023, Wolf terminated plaintiff's employment by letter and email. Wolf's May 5, 2023 letter states that it contains "[a] discussion of the review of some of your [(plaintiff's)] work ***

---

[1]       See *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 19 (citing *Farris v. Department of Employment Security,* 2014 IL App (4th) 130391, ¶ 31 ("holding that the Department had standing to appeal the circuit court's decision reversing its denial of unemployment insurance benefits because it had a duty to protect the fund from diminution in the form of disbursements to ineligible claimants")).

since it directly relates to why you are being terminated for cause." The letter discusses problems with plaintiff's performance on approximately six of the firm's cases as well as noncompliance with firm practices and concerns about plaintiff's behavior. Plaintiff contends the Board's decision "rested entirely on [one] 'specific order' regarding a motion" in one of the cases noted in the May 5th letter.

¶ 7    The Department claims adjuster initially interviewed Attorney Wolf, who was plaintiff's former supervisor. During the interview Attorney Wolf recounted information about multiple instances of plaintiff's conduct leading to her termination, as stated in Wolf's May 5th letter. The adjuster also interviewed plaintiff. The claims adjuster found that plaintiff was discharged "because of a willful misconduct in connection with her work" without specifying any particular instance(s) of misconduct that formed the basis of the adjuster's determination.

¶ 8    Plaintiff appealed the determination by the claims adjuster. Both plaintiff and Wolf submitted exhibits and testified before the Department referee. At the hearing before the referee, Attorney Wolf testified that in March 2023 plaintiff notified Attorney Wolf that she was pregnant and requested accommodations to her work. Plaintiff's position required extensive driving to courtrooms across the state and plaintiff testified that during a "team meeting" on March 16, 2023, she "said that I was *** having medical issues *** involving nausea and vomiting that was affecting *** me being able to drive." Plaintiff and Attorney Wolf spoke privately and agreed that plaintiff would do more research and writing, and Attorney Wolf would do more of the work involving driving.

¶ 9    Plaintiff also testified about receiving the assignment on the motion for a new trial that is the basis of the Board's decision. Plaintiff testified that she first received the assignment on March 30, 2023. Two days earlier, plaintiff was scheduled to appear in court on the case

involved with the motion, but plaintiff "was having a lot of *** nausea and vomiting issues that morning." She asked Attorney Wolf to cover the court appearance, which he did. Plaintiff testified she did not hear anything about the case after the court appearance until she asked Attorney Wolf about it two days later, on March 30th, in a telephone conversation. Plaintiff testified that Attorney Wolf informed her that a motion for a new trial had to be filed on the next court date and asked plaintiff to "start working on the motion primarily regarding *** objections by the attorneys that were sustained." Plaintiff testified that Attorney Wolf told her "to see what I could get done by the next Friday [(April 7, 2023)]." According to plaintiff, "I told him that I was concerned about how much I could be … be able to get done in that time 'cause I had an order of protection hearing the next day that I was doing on my own. [A]nd I had other stuff that I was working on as well. And he told me just to do what I could and do my best."

¶ 10     On April 9, 2023, at 9:01 PM, Attorney Wolf emailed plaintiff about the motion. Attorney Wolf's April 9 email reads, in pertinent part, as follows:

> "On Friday, April 7, we held an afternoon telephone meeting between you, me and Maria [(the firm's office manager)] ***. When I asked you to please send me whatever you had completed up to that point in time for my review, you informed me that the only thing that you had done up to that point in time over the last eight days was to re-read transcripts and write the case caption of the Motion. [(At the hearing, plaintiff testified that Attorney Wolf's only response at that time was "okay" before the meeting abruptly ended.)]

> While I did not expect you to be submitting a complete piece of work on this section of the Motion for a new Trial, I did not expect you on the other hand to have written nothing at all. I cannot adequately express my disappointment that

you did not consider this assignment to be a priority, apparently choosing to work on other matters instead."

Attorney Wolf instructed plaintiff to "Do as much as you can and email me your progress for my review and comment by 6:00 p.m. on Monday."

¶ 11     The following Monday morning plaintiff responded via email stating, in part, "I was not aware this was a priority or that you were covering all court appearances so I could work on the Motion. I have been working on several cases and we have not had any meetings or otherwise to address my workload or work priorities."

¶ 12     At the hearing before the referee, when asked whether Attorney Wolf gave plaintiff "any sort of deadline for the motion," plaintiff responded, "I didn't know it was a deadline. He just said do as much as you could by that date." Plaintiff also testified that on April 10th she sent a follow up email to Attorney Wolf "asking for an additional hour and asked him if I could get him what I could by 7:00 because I was having more nausea and vomiting that afternoon." Plaintiff testified that Attorney Wolf said yes, she sent him the draft motion that she was able to get done by 7:00, and she called Attorney Wolf to let him know that she had sent it. Plaintiff testified that Attorney Wolf "said that he had gotten it and that we were okay."

¶ 13     The referee affirmed the claim adjuster's determination and found that plaintiff is not eligible for benefits. The referee's written decision discussed multiple concerns Wolf raised regarding plaintiff. The referee concluded:

> "The evidence proved that [plaintiff] was discharged for misconduct within the meaning of Section 602A of the Act. [Plaintiff] deliberately and willfully was dishonest with [Wolf] regarding at least two matters as was uncovered by [Wolf.] [Plaintiff] deliberately and willfully failed to meet some

deadlines imposed by [Wolf.] [Plaintiff] failed to do what was right for some of the clients of the firm, placing them at risk of harm. [Plaintiff] engaged in disrespectful behavior toward [Wolf.] These actions were deliberate and willful violations of the terms and conditions of hire. [Wolf] was harmed through the extra work required to correct the situations. The dishonesty also broke the bond of trust essential to the employment relationship."

¶ 14 Plaintiff appealed the referee's decision to the Board. Plaintiff and Wolf submitted written arguments to the Board. The Board's decision states that it reviewed "the record of the evidence in this matter, including the transcript of the testimony submitted at the hearing" before the referee, and considered the parties' written arguments. The Board found that the "record adequately sets forth the evidence so that no further evidentiary proceedings are deemed necessary."

¶ 15 The Board made findings of fact in its decision. The pertinent facts in the decision are that Wolf discharged plaintiff via letter and email that "indicated issues of misconduct with respect to several cases," the final incident having involved plaintiff's "failure to write a section of a motion for a new trial." Regarding this "final incident" the Board found that, "On March 30, 2023, [Attorney Wolf] gave [plaintiff] the assignment to write the motion. She was asked to complete the motion within seven days. *** [Plaintiff] expressed doubts whether she could complete the motion ***. Mr. Wolf told her to see what she could do." By April 7, 2023, plaintiff had not started writing the motion. Attorney Wolf learned that plaintiff had not started the assignment on a Friday. Attorney Wolf emailed plaintiff on the following Sunday night and informed plaintiff "that she had until Monday to complete the project." Plaintiff responded via email "stating she did not believe this project was a priority and that she had prioritized other

work." Attorney Wolf granted plaintiff's request for a few more hours, until Monday night, to submit a draft because plaintiff was not feeling well. Plaintiff presented a draft by Monday night.

¶ 16 The Board also made factual findings regarding other instances of plaintiff's conduct and identified Wolf's other "areas of concern." However, the Board found only that plaintiff "was discharged for misconduct" as defined by the Act based on plaintiff's "failure to complete her part of the motion for a new trial by [Wolf's] deadline." The Board found plaintiff's failure to complete her part of the motion for a new trial by the deadline "especially serious" based on plaintiff's "total failure to even start work on the motion within the seven to nine days given to her to start work." The Board found that plaintiff decided that the motion "was not a high priority despite being given a week to start the work." Plaintiff demonstrated that "she could perform [the work] as she presented a draft by Monday night." The Board found that Wolf gave plaintiff "a reasonable and lawful instruction which she could perform as demonstrated by her actions in submitting a draft in one day ***. Thus, her refusal was not due to lack of ability, skill or training. Section 602A (5) clearly applies in this instance."

¶ 17 The Board's decision concluded as follows:

"We find [plaintiff] was discharged for misconduct as defined in Section 602A (5) of the Act. Section 602A of the Act is inapplicable as the employer admitted it had no personnel policies in place. With the exception of the last incident [involving the motion for a new trial,] [Wolf's] complaints resemble poor work performance rather than willful and deliberate acts in violation of any employer rules. Whereas [plaintiff's] last act of not starting to write a motion for a new trial within the week assigned is more properly adjudicated under Section 602A(5). A specific order to begin writing a motion for a new trial within a week

was given in late March of 2023. The order was lawful. [Plaintiff] had the ability to obey the order. She chose to perform other work and not start work on the motion. All the elements of Section 602A(5) are satisfied."

¶ 18 The Board found that plaintiff is not eligible for benefits. Plaintiff filed a complaint for administrative review in the circuit court of Cook County. Following full briefing by the parties, the circuit court issued a written order. The circuit court found that:

"Compliance with deadlines in private legal practice is a work performance issue—not an issue governed by Section 602(A)(5). This was not an instance of insubordination and to interpret Section 602(A)(5) to extend to the facts in this case would punish nothing more than dissatisfactory work performance and subvert the overarching legislative intent underlying eligibility for unemployment benefits."

¶ 19 The circuit court concluded that it "is of the definite and firm conviction that a mistake was committed by the Board of Review in finding misconduct pursuant to Section 602(A)(5)." The court reversed the Board's decision.

¶ 20 This appeal followed.

¶ 21 ANALYSIS

¶ 22 In an appeal from a judgment on a complaint for administrative review of a decision by an administrative agency, like the Department, this court reviews the decision of the agency and not the decision of the circuit court. *Boggio v. Mudge*, 2018 IL App (3d) 170432, ¶ 16 ("When reviewing a final administrative decision, the appellate court's role is to review the administrative decision rather than the circuit court's decision."). "A reviewing court may reverse an administrative decision where the administrative agency's legal determination was

erroneous, its factual findings were against the manifest weight of the evidence, or its resolution of mixed questions of law and fact were clearly erroneous." *Id.*

¶ 23    An agency's legal determinations include " 'an agency's interpretation of the meaning of the language of a statute,' a question we review *de novo.*" *520 S. Michigan Avenue Associates v. Department of Employment Security*, 404 Ill. App. 3d 304, 312 (2010) (citing *Cinkus v. The Village of Stickney Municipal Officers Electoral Board et al.*, 228 Ill. 2d 200, 210 (2008)).

¶ 24    " 'An administrative agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct. [Citation.] We disturb them only if 'such findings of fact are against the manifest weight of the evidence.' [Citation]" *Id.* (quoting *Cinkus,* 228 Ill. 2d at 210). "[A]n administrative agency's factual determinations are against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Davis Bancorp, Inc. v. Board of Review of Department of Employment Security*, 393 Ill. App. 3d 135, 141 (2009).

¶ 25    "A mixed question of law and fact is one 'involv[ing] an examination of the legal effect of a given set of facts.' [Citation.] Stated another way, a mixed question is one 'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' [Citations]" *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). "The agency decision is clearly erroneous only where the reviewing court is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Boggio*, 2018 IL App (3d) 170432, ¶ 16 (quoting *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395).

¶ 26    The Board determined that plaintiff was discharged from work for refusal to follow a lawful instruction from the employer pursuant to section 602(A)(5) of the Act. Section 602 of the Act reads, in pertinent part, as follows:

"A. An individual shall be ineligible for benefits for the week in which he has been discharged for *misconduct* connected with his work ***. ***. For purposes of *this subsection*, the term 'misconduct' means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit. The previous definition *notwithstanding*, 'misconduct' shall include any of the following work-related circumstances:

* * *

5. Refusal to obey an employer's reasonable and lawful instruction, unless the refusal is due to the lack of ability, skills, or training for the individual required to obey the instruction or the instruction would result in an unsafe act." (Emphases added.) 820 ILCS 405/602(A), 602(A)(5) (West 2022).

¶ 27    The legislature amended sections 1 through 8 of section 602(A) in 2016. This court construed section 602(A)(5) of the amended statute in *Persaud v. Illinois Department of Employment Security*, 2019 IL App (1st) 180964. In *Persaud*, the employer alleged that it terminated the employee for "disobeying instructions whether through neglect, procrastination, or deliberate disobedience" and "deliberately refusing to obey the orders or instructions of a

manager ***." *Persaud*, 2019 IL App (1st) 180964, ¶ 4. Specifically, the employee refused to meet with their manager to receive a "disciplinary action report and a performance improvement plan" *Id*. The Board reversed the referee's finding that the employee's actions "were 'an error in good faith' " and found that the employee was terminated for misconduct pursuant to section 602(A)(5) of the Act. *Id*. ¶ 9. The Board concluded: " 'Because the refusal was not due to lack of ability, skills, or training for the individual required to obey the instruction or the instruction would result in an unsafe act, the [employee's] refusal to obey the employer's reasonable and lawful instruction constitutes misconduct as defined under Section 602A(5) of the Act.' " *Persaud.*, 2019 IL App (1st) 180964, ¶ 10. This court began by noting that

> "the Board's determinations that [the employee's] supervisor instructed her to meet with her, and that [she] refused, are questions of fact subject to the manifest-weight standard of review. Whether the Board correctly interpreted the term 'misconduct' in the Act is a legal question subject to *de novo* review. And whether the Board correctly determined that [the employee] was discharged for misconduct, by applying the facts to the law, presents a mixed question that we will not disturb unless clearly erroneous." *Id*. ¶ 17.

¶ 28    This court found that,

> "The new subsection (A)(5) imposes a lower threshold in situations where an employee refuses to follow an employer's reasonable and lawful instruction. There is no requirement that the refusal be willful or deliberate, nor does the law require proof that the employer was harmed or the conduct was repeated, or that the conduct have violated reasonable work-related rule." *Persaud*, 2019 IL App (1st) 180964, ¶ 19.

¶ 29   The court noted that while "the *general* definition of 'misconduct' requires a deliberate or willful state of mind, repeated conduct, and proof of harm to the employer, *** the statute continues to provide that, 'notwithstanding' that previous definition, certain actions are deemed to be misconduct *per se*. [Citation.] The word 'notwithstanding' in this context means independent of the previous definition, 'in spite of' the previous definition, an 'exception' to the general definition." *Persaud*, 2019 IL App (1st) 180964, ¶ 21. Thus,

> "The only exceptions to a finding of 'misconduct' under this specific
>
> definition are (1) if the reasonable and lawful instruction could not be followed by
>
> the employee due to lack of ability, skills, or training, or (2) if the instruction
>
> would require an unsafe act. [Citation.] (And of course, as subsection (A)(5) says,
>
> the instruction would have to 'reasonable and lawful' in the first instance.
>
> [Citation.])" *Persaud.*, 2019 IL App (1st) 180964, ¶ 22.

¶ 30   Finally, this court found, "[i]n construing the word 'reasonable' in section 602(A)'s general misconduct definition, courts have found that an instruction is 'reasonable' if it 'appropriately relate[s] to the workplace' and concerns standards of behavior that an employer has a right to expect from an employee." *Id*. ¶ 23.

¶ 31   In this case the Board argues that its decision should be upheld because (1) Attorney Wolf's instruction to plaintiff was reasonable and lawful—the instruction was to provide a draft by a specific deadline; (2) plaintiff "refused" to obey Wolf's instruction for reasons other than lack of ability, skills, or training; and, finally, (3) the Board's (i) factual determination that Wolf gave plaintiff a deadline is not against the manifest weight of the evidence, (ii) legal determination that plaintiff's conduct was a "refusal" to obey is not erroneous where plaintiff

"intentionally and undisputedly *** did not do [the assigned work] at all," and (iii) conclusion that plaintiff committed misconduct under section 602(A)(5) is not clearly erroneous.

¶ 32    Plaintiff argues the Board misapplied section 602(A)(5) of the Act because (1) section 602(A)(5) requires that the instruction to the employee be "reasonable" and an "instruction is not 'reasonable' within the meaning of the Act unless the employee has actual or constructive notice of what is required;" (2) even where the instruction is "clear and explicit" only a "violation of a clear and explicit instruction" that "demonstrates rejection of the basic social contract between employer and employee" will satisfy section 602(A)(5), and (3) "refusal" in section 602(A)(5) "cannot reasonably be interpreted to encompass an attorney's good faith decision about prioritizing imminent court hearings over drafting assignments." Finally, plaintiff argues that the Board's interpretation would lead to absurd results because under its interpretation "any terminated employee could be denied benefits based on *post hoc* characterization of routine prioritization of decision making as 'refusal' of specific orders."

¶ 33                    (1) Reasonable Instruction

¶ 34    In this case, plaintiff contends that the amendments to section 602(A) "merely eliminated the need to prove the formalities of prior written warnings, specific intent, or reasonably anticipated or actual harm" but that a "reasonable" rule or instruction still must be established, and our supreme court stated the principles concerning what constitutes a "reasonable rule" in *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 32. Plaintiff argues that those principles "were not altered by the 2016 amendments creating Section 602(A)(5)" and that Attorney Wolf's instruction was not "reasonable" under those principles because "the hearing testimony reveals no clear instruction was ever given" regarding the motion for a new trial, plaintiff did not understand Attorney Wolf's instructions as a deadline, and that she actually did

engage with the task by reviewing the trial transcript and beginning research. Plaintiff also argues that the instruction in this case was "not a clear directive with a known deadline" because Wolf was not expecting a finished draft and the assignment was not put in writing or in the firm's case management system. Plaintiff argues that Attorney Wolf's conduct of telling plaintiff to "do what she could and do her best" after plaintiff expressed concern about finishing the project on time, and in not reiterating the deadline during a meeting on the Friday afternoon before his subsequent email, demonstrates that the instruction was not a firm deadline with known consequences but was a flexible request.

¶ 35    In *Petrovic*, the issue was whether the "plaintiff was discharged for misconduct within the meaning of section 602(A) of the Act." *Petrovic*, 2016 IL 118562, ¶ 22. Our supreme court found that an employee's actions constitute misconduct under section 602(A) of the Act only if three requirements are satisfied, including that (1) there was a deliberate and willful violation of (2) a reasonable rule or policy governing the individual's behavior in the performance of their work. *Id*. ¶ 26. The court found that " 'a rule is not reasonable unless it provides guidelines that are or should be known by the employee.' [Citation.]" *Petrovic*, 2016 IL 118562, ¶ 32. In that case, the employer's witness testified "only that '[p]olicies and procedures were not followed' without identifying any express or written policy," and that the employee "asked 'the wrong people' and failed to seek management approval" for her actions. *Id*. The court found "these vague and conclusory statements do not constitute competent *evidence* of a reasonable rule or policy prohibiting plaintiff's actions." (Emphasis added.) *Petrovic*, 2016 IL 118562, ¶ 32. The court also noted that there was no "evidence introduced of *informal or unwritten* rules pertaining to" the matter at hand. (Emphasis added.) *Id*. ¶ 37. Our supreme court found that "[i]n the

absence of a rule prohibiting her conduct, [the] plaintiff could not reasonably have predicted that she would be fired as a result." *Petrovic*, 2016 IL 118562, ¶ 37.

¶ 36    The requirements for a rule or instruction to be reasonable that can be drawn from *Petrovic* are that the rule or instruction "must have been clearly expressed to the employee in order to place the employee on notice that she could be fired for violating it" and "provide[] guidelines that are or should be known by the employee." *Petrovic*, 2016 IL 118562,  ¶¶ 31-32. Additionally, this court has found that in construing the word "reasonable" in section 602(A)'s general misconduct definition, courts have found that an instruction is "reasonable" if it "appropriately relate[s] to the workplace" and "concerns standards of behavior that an employer has a right to expect from an employee." *Persaud*, 2019 IL App (1st) 180964, ¶ 23.

¶ 37    The Board argues that its finding that Attorney Wolf instructed plaintiff to provide the draft motion by a specific deadline is not against the manifest weight of the evidence. The Board argues that when plaintiff expressed concern about meeting the deadline, and Attorney Wolf told plaintiff to "see what she could do," Attorney Wolf was in fact keeping the deadline in place. The Board argues that since its findings that Attorney Wolf told plaintiff to send him a draft motion by a specific date and that she missed that deadline are supported by the evidence, they should not be disturbed on administrative review.

¶ 38    "The mere fact that an opposite conclusion is reasonable or that a reviewing court might have ruled differently will not justify reversal. [Citation.] A reviewing court may not substitute its judgment for that of the board. [Citation.]" *Bless v. Cook County Sheriff's Office*, 2024 IL App (1st) 230256, ¶ 39. "If the record contains evidence to support the agency's decision, we must affirm that decision. [Citation.]" *Roman v. Cook County Sheriff's Merit Board*, 2014 IL App (1st) 123308, ¶ 67. "If, on review, the issue is merely one of conflicting testimony and credibility

of a witness, the agency's determination should be sustained. [Citation.]" (Internal quotation marks omitted.) *520 S. Michigan Avenue Associates*, 404 Ill. App. 3d at 318.

¶ 39     In this case, the Board found that, "On March 30, 2023, the employer gave [plaintiff] the assignment to write the motion. She was asked to complete the motion within seven days, April 6, 2023 [*sic*]." The Board acknowledged that plaintiff "expressed doubts whether she could complete the motion because she had a trial the next day as well as other stuff." Nonetheless, the Board found that, "Despite her protests, the employer gave the assignment to [plaintiff] with a deadline of one week to work on this project." The Board also found that, "The employer gave her eight days in March to work on the assignment."

¶ 40     The Board's findings are supported by evidence in the record. The Board cited plaintiff's testimony that "he [(Attorney Wolf)] told me the … to see what I could get done by the next Friday, the 7th. So he gave me about a week." The Board also cited Attorney Wolf's testimony wherein the referee asked, with regard to the motion, "on what date had you given her this assignment?" Attorney Wolf responded and then the referee asked, "And when you gave her the assignment, was it at that point that you told her that she had a deadline?" Attorney Wolf responded, "yes. I gave her a *** eight or nine day deadline to write me a section." Attorney Wolf testified that later, he "learned that she wrote none of it." Wolf's uncertainty about whether the deadline was eight days or nine days is immaterial. The record reflects the deadline was a date certain, Friday, April 7, 2023. The fact that Attorney Wolf could not recall whether that was eight days from the day he gave plaintiff the assignment or nine days is immaterial because the record reflects plaintiff knew the exact date her compliance with Attorney Wolf's instruction was expected. Nor is the fact that Attorney Wolf was not expecting a "finished product" consequential. The instruction was to begin writing a section of a motion by a specific deadline,

and by that date plaintiff had written nothing. Therefore, she did not follow Attorney Wolf's instruction to begin writing "something."

¶ 41    Furthermore, there is no authority stating that an instruction must be in writing to be "reasonable" under the Act. In *Petrovic*, our supreme court found that, "While a rule or policy *need not be written or formalized* ([citation]), it must have been clearly expressed to the employee in order to place the employee on notice that she could be fired for violating it." (Emphasis added.) *Petrovic*, 2016 IL 118562, ¶ 31. In *Garner v. Department of Employment Security*, 269 Ill. App. 3d 370, 373 (1995), cited by plaintiff, the employee was discharged for failing to report for work on three consecutive days after not receiving his paycheck. The employee did not call his employer to report his absence on the first of those three days. *Id*. The employee asserted that the employer "failed to demonstrate the existence of a reasonable rule or policy under the circumstances presented." *Id*. at 375. The *Garner* court repeated the rule that "a rule is not reasonable unless it provides guidelines that are or should be known by the employee. [Citations.]" *Garner*, 269 Ill. App. 3d at 375. The court found that the "record contains references to [the employee's] knowledge of the call-in policy for absences" and that "requiring an employee to call in to report an absence is a reasonable policy." *Id*. at 376. Nowhere did the *Garner* court find that the policy had to be in writing. See *Sudzus v. Department of Employment Security.*, 393 Ill. App. 3d 814, 827 (2009) ("a rule or policy need not be written down or otherwise formalized" to be reasonable under section 602(A)). If a rule does not have to be written for purposes of Rule 602(A), we can find no reason that an instruction must be written for purposes of section 602(A)(5) so long as the instruction was clearly communicated to the employee.

¶ 42    Plaintiff merely asks this court to reweigh the evidence and draw the opposite conclusion to that the Board. We will not reweigh the evidence and substitute our judgment for that of the Board.

> "An agency's factual findings and conclusions are 'deemed *prima facie* true and correct.' [Citation.] When examining an agency's factual findings, we will not re-weigh the evidence or substitute our judgment for that of the agency. [Citation.] We merely determine whether the agency's findings of fact are against the manifest weight of the evidence. [Citation.] An agency's factual findings are against the manifest weight of the evidence only 'if the opposite conclusion is clearly evident.' " *Persaud*, 2019 IL App (1st) 180964, ¶ 14.

In light of the evidence cited above, we cannot say that the opposition conclusion is clearly evident in this case. The Board's finding that Attorney Wolf gave plaintiff a clear instruction with a deadline is not against the manifest weight of the evidence.

¶ 43    The Board's factual findings also establish that the instruction was clearly expressed to plaintiff and provided plaintiff with guidelines for following Attorney Wolf's instructions. *Petrovic*, 2016 IL 118562, ¶¶ 31-32. Plaintiff testified that Attorney Wolf instructed her to write a section of a motion for a new trial addressing certain objections that had been granted at the trial and to have a draft section written by a date certain, which plaintiff failed to do. There is no contention that the instruction did not appropriately relate to plaintiff's workplace or did not concern standards of behavior that Wolf had a right to expect from an associate attorney. *Persaud*, 2019 IL App (1st) 180964, ¶ 23 (citing *Sudzus*, 393 Ill. App. 3d at 827). Therefore, we find that the Board's finding that the instruction was "reasonable" under the Act is not erroneous as a matter of law. *Id.*, *Petrovic*, 2016 IL 118562, ¶¶ 31-32.

¶ 44                                    (2) Refusal to Obey

¶ 45    There is no genuine dispute that plaintiff did not meet the initial drafting deadline. Rather, plaintiff argues that the failure to do so was not a "refusal" to follow Attorney Wolf's instruction within the meaning of the Act. Plaintiff argues that the Board's finding that she "refused" any instruction was "clearly erroneous." Plaintiff argues that only a "violation of a clear and explicit instruction" that "demonstrates rejection of the basic social contract between employer and employee" will satisfy section 602(A)(5), and in support, plaintiff cites this court's decision in *Sudzus*. Plaintiff also argues that "refusal" within the meaning of section 602(A)(5) requires "knowing noncompliance." Plaintiff argues that the Board's interpretation of what constitutes "refusal" is contrary to the plain meaning of "refusal" and would make section 602(A)(5) inconsistent with other provisions in section 602(A), "all of which require some element of knowing or deliberate conduct." Plaintiff also argues that the Board's interpretation contradicts the purpose of the Act as stated in *Petrovic*, 2016 IL 118562, ¶ 23 to exclude only those who lack a sincere desire to work or who voluntarily become unemployed by denying benefits to workers "earnestly trying to meet employer expectations" but there was "imperfect task completion."

¶ 46    First, we reject plaintiff's argument that the examples of specific types of misconduct added to section 602(A) retained elements of proof from the prior version of section 602(A). This court has found directly to the contrary, stating that: "The new subsection (A)(5) imposes a *lower threshold* [than section 602(A)] in situations where an employee refuses to follow an employer's reasonable and lawful instruction." (Emphasis added.) *Persaud*, 2019 IL App (1st) 180964, ¶ 19. Furthermore, *Sudzus* does not support plaintiff's contention. In *Sudzus*, the court found that "[a] reasonable rule concerns standards of behavior which an employer has a right to

expect from an employee." (Internal quotation marks and citations omitted.) *Sudzus*, 393 Ill. App. 3d at 827. The court also found that even without direct evidence of a rule, "the reviewing court may make a 'commonsense realization that certain conduct intentionally and substantially disregard an employer's interest.' [citation.]" *Id*. The policy at issue in *Sudzus* "was not written down," but the court found that it could "make a 'commonsense' determination that [the employer's employees] were not authorized to" engage in the conduct at issue. *Id*. "Therefore, the rule or policy *** was a reasonable rule within section 602(A) of the Act." *Id*. This court found no clear error in the denial of unemployment benefits under section 602(A). *Sudzus*, 393 Ill. App. 3d at 828.

¶ 47    To the extent plaintiff argues that because Attorney Wolf's instruction was not written down the Board was required to make a determination that plaintiff's conduct intentionally and substantially disregarded Wolf's interest in order to establish that the Board properly found that Wolf terminated plaintiff for misconduct under the Act, we find that that conclusion in this case is consistent with *Sudzus*. In *Sudzus*, the "rule" was really an instruction regarding work to be performed on a particular job site. *Sudzus*, 393 Ill. App. 3d at 818 (employees were not to be on the roof where HVAC units were located "because their only assignment was to disconnect the units from inside the building"). The court found that although the "policy" was not written down, it could make a commonsense determination that employees were not authorized to be on the roof and dismantle any HVAC units, and there was a nexus between the employee's conduct and his employment, therefore, "the rule or policy *** was a reasonable rule within section 602(A) of the Act." *Id*. at 827. The court upheld the Board's decision that the employee was terminated for misconduct. *Id*. at 819, 828. In this case, Attorney Wolf instructed plaintiff what to do, plaintiff had the ability to comply, and there was a nexus between plaintiff's conduct and

her employment. It is a "commonsense determination" that plaintiff was not authorized to *not* write the section of the motion. Therefore, the instruction was reasonable, and plaintiff failed to comply. We find that *Sudzus* does not impose any higher standard to permit the Board to find that Wolf terminated plaintiff for misconduct.

¶ 48    Plaintiff also argues that caselaw applying section 602(A)(5) continues "Section 602(A) precedent focusing on basic social expectations rather than employer dissatisfaction with ambiguous or poorly communicated requests." Plaintiff argues that this case bears no resemblance to her authorities because in this case, unlike those cases, there "was no clear directive, no written instruction and no policy," nor were there "explicit consequence[s] communicated."

¶ 49    Plaintiff's argument fails because the finding that there *was* a clear directive is not against the manifest weight of the evidence and plaintiff cites no authority to support a finding that explicit consequences for failing to follow an instruction must be communicated for there to be a "refusal to obey" within the meaning of section 602(A)(5). We note that the *Petrovic* court did not hold that the employee had to be notified that they *would* be fired for violating the rule, only that the rule be clear enough that the employee is on notice that they "could be" fired for violating it. *Petrovic*, 2016 IL 118562, ¶ 31. "[T]he purpose of a disqualification is to prevent abuse of the unemployment insurance system by those whose termination is essentially by choice. Therefore, an employee should not be disqualified unless she engages in conduct she knew was prohibited." *Petrovic*, 2016 IL 118562, ¶ 36. Thus, the employee must only be able to reasonably predict that they may be fired for violating the rule or instruction. See *Petrovic*, 2016 IL 118652, ¶ 37 ("In the absence of a rule prohibiting her conduct, [the] plaintiff could not reasonably have predicted that she would be fired as a result.").

¶ 50 Moreover, the post-amendment cases on which plaintiff relies, *Persaud*, *Harter*, and *Thermen*, lend no support to plaintiff's position. In each case, the courts simply found that the employee failed to comply with a reasonable rule or instruction and, therefore, committed misconduct under the Act. *Persaud*, 2019 IL App (1st) 180964, ¶ 22 ("The only exceptions to a finding of 'misconduct' under this specific definition are (1) if the reasonable and lawful instruction could not be followed by the employee due to lack of ability, skills, or training, or (2) if the instruction would require an unsafe act. [Citation.]"), *Harter v. Department of Employment Security*, 2020 IL App (1st) 191813-U, ¶¶ 13-14 (finding that "the Board's determination that [the employee] refused to obey a reasonable and lawful instruction from his employer supported a finding of misconduct under section (A)(5) of the Act" where the employee "wore an earpiece in his ear after having been previously warned against wearing his earpiece at work"), *Thermen v. Department of Employment Security*, 2024 IL App (1st) 220541-U, ¶ 45 (the employee "was repeatedly instructed to bring any issues with coworkers to his supervisor" but "disobeyed the instruction by engaging in an altercation with a coworker over a work-related disagreement. The Board properly found that this amounted to a refusal to obey the employer's reasonable and lawful instruction, and that [the employee] therefore was ineligible for unemployment benefits as he was discharged for misconduct under section 602(A)(5) of the Act.").

¶ 51 Next, while acknowledging that this court has recognized that "[s]ubsection (A)(5) *** gives an independent example of one particular type of 'misconduct' " that "does not require willfulness" (*Persaud*, 2019 IL App (1st) 180964, ¶ 22), plaintiff argues that in this case, the Board has read *Persaud* "too broadly" and eliminated "any requirement of knowing non-compliance." Plaintiff asserts the record shows that she prioritized competing assignments and no more than "imperfect compliance" with "an informal, flexible timeline." Plaintiff argues that

to construe "refusal" to encompass "mere imperfect compliance" would make it an outlier among the other independent examples of particular "types" of misconduct in subsection (A)(1) through (A)(8); all of which, plaintiff argues, "require some element of knowing or deliberate conduct," and would contradict the fundamental remedial purpose of the Act. Plaintiff goes on to argue that the record establishes her "active compliance" with Attorney Wolf's instruction because she engaged in "ongoing work" on the motion by "review[ing] the trial transcript," and by completing the instructions "when given clear direction *** Sunday night." Plaintiff argues that characterizing these acts as a "refusal" to comply with Attorney Wolf's instruction is erroneous.

¶ 52       Plaintiff cites *Sardiga v. Northern Trust Co.*, 409 Ill. App. 3d 56, 64 (2011), for the proposition that "merely complaining about an activity—as opposed to actually refusing to participate in it—is not sufficient to entitle a plaintiff to relief under the Act." Plaintiff's reliance on *Sardiga* is misplaced. *Sardiga* did not construe the Act; rather, *Sardiga* construed the Illinois Whistleblower Act and asked whether "refusing to participate in an activity that would result in a violation of a State or federal law" included "complaints and questions about the activity in question." *Sardiga*, 409 Ill. App. 3d at 61. See also *Zuaznabar v. Board of Review of Department of Employment Security*, 257 Ill. App. 3d 354, 357 (1993) ("in drafting section 602(A), the legislature intended that persons discharged for 'incapacity, inadvertence, negligence or inability to perform assigned tasks' should receive unemployment benefits"). *Zuaznabar*, also cited by plaintiff, is inapposite because it construed section 602(A) and relied on the specific elements of that section to find that the employee was not disqualified from unemployment benefits, specifically because the employer "failed to prove that [the employee's] alleged unsafe driving or unauthorized stops amounted to deliberate or willful conduct, that it suffered actual harm, or

that [the employee] received explicit warnings about the conduct which served as the basis for his discharge." *Zuaznabar*, 257 Ill. App. 3d at 356.

¶ 53　This court's authorities belie plaintiff's "imperfect" compliance or task completion argument. This court clearly held that the "only exceptions to a finding of 'misconduct' [for refusal to obey an employer's reasonable and lawful instruction] are (1) if the reasonable and lawful instruction could not be followed by the employee due to lack of ability, skills, or training, or (2) if the instruction would require an unsafe act. [Citation.]" *Persaud*, 2019 IL App (1st) 180964, ¶ 22. "Imperfect task completion" is not an exception to a finding of misconduct under section (A)(5). We also reject plaintiff's argument that the Board's application of section (A)(5) to the particular facts of this case makes it an outlier among the other examples of particular kinds of misconduct added to the Act in 2016. Failing to follow an employer's instruction when that failure is not due to lack of ability, skills, or training or because following the instruction would require an unsafe act is sufficient for purposes of section 602(A)(5) of the Act. "A violation of section (A)(5) is considered misconduct *per se*" and, therefore, "there is no requirement that the conduct was deliberate or willful." *Harter*, 2020 IL App (1st) 191813-U, ¶ 18 (citing *Persaud*, 2019 IL App (1st) 180964, ¶ 21).

¶ 54　In *Harter*, the employee sought reversal of the Board's decision finding him ineligible for benefits "because his actions that led to his discharge were accidental and not deliberate or intentional." *Harter*, 2020 IL App (1st) 191813-U, ¶ 2. The employee argued to the Board that "he accidentally left his earpiece in [after being instructed not to wear his earpiece]" but the Board found the employee's "claim that it was an accident *** was not credible." *Id*. ¶¶ 5-6. The Board found that the employee "refused to obey the employer's reasonable and lawful instruction" and this court affirmed. *Id*. ¶¶ 7, 14. Although the Board and this court specifically

relied on the finding that the employee's testimony was not credible (*id*. ¶ 12), this court also noted that "as a new employee in his probationary period who had already received a warning, plaintiff was on notice to be extra careful and ensure that he did not wear his earpiece at work." *Harter*, 2020 IL App (1st) 191813-U, ¶ 18. Under plaintiff's view, the employee's conduct in *Harter* could be characterized as "imperfect task completion" in that the employee argued he had not engaged in "knowing non-compliance." This court rejected that claim in part because it was not credible but also by relying on the employee's failure to use caution to comply with the employer's instruction, and it found that the Board's finding that the employee *refused* to obey the employer's instruction was not against the manifest weigh of the evidence. *Harter*, 2020 IL App (1st) 191813-U, ¶ 12.

¶ 55    In *Persaud*, the referee found that the employee's failure to meet with her supervisor after twice being instructed to attend a meeting to discuss the employee's performance issues was " 'an error in good faith' " and "that she was not terminated for misconduct." *Persaud*, 2019 IL App (1st) 180964, ¶ 9. The employee testified that she refused to meet with her supervisor because she was "stressed out" about an upcoming surgery, that she walked away from the supervisor "because she [(the employee)] was upset and crying," and that she "repeatedly asked to postpone the meeting." *Id*. ¶ 8. The Board reversed the referee and found that the employee had been discharged for misconduct. *Id*. ¶ 9. The Board relied on section 602(A)(5) of the Act and found that,

> " '[b]ecause the refusal was not due to lack of ability, skills, or training for the
>
> individual required to obey the instruction or the instruction would result in an
>
> unsafe act, the [employee's] refusal to obey the employer's reasonable and lawful

instruction, constitutes misconduct as defined under Section 602A(5) of the Act.'

" *Persaud*, 2019 IL App (1st) 180964, ¶ 10.

¶ 56     On the question of whether the employee "refused" her supervisor's instruction to meet with her, this court found that the "testimony provided the Board with more than ample evidence to support its finding that [the employee] was repeatedly asked, and repeatedly refused, to meet with [her supervisor] to discuss her performance issues." *Id*. ¶ 18. This court acknowledged that the employee "stated that she thought that in refusing [the] request and instead seeking to postpone the interview until after she returned from medical leave, she [(the employee)] was in essence requesting a 'reasonable *** accommodation.' " *Id*. 18. In *Persaud*, the court did not need to rely on a credibility determination to find the employee's explanation insufficient to preclude finding that she was discharged for misconduct. See *id*. This court simply found that the "Board's factual findings[, that the employee did refuse to follow the instruction,] were not against the manifest weight of the evidence." *Persaud*, 2019 IL App (1st) 180964, ¶ 18.

¶ 57     In *Persaud* the employee testified, in essence, to what plaintiff argues to this court: that she was earnestly trying to meet her employer's expectations and may have believed that she was. Nonetheless, the employee's failure to meet with her supervisor based on her own choices and beliefs, rather than inability, lack of training, or danger, provided "more than ample evidence" to permit this court to find that the Board's findings were "not against the manifest weight of the evidence." *Id*. ¶ 18, see *id*. ¶ 22 ("Subsection (A)(5) of section 602 thus gives an independent example of one particular type of 'misconduct'—'Refusal to obey an employer's reasonable and lawful instruction.' [Citation.] That 'misconduct' does not require willfulness ***."). Similarly, in this case, the record provides ample evidence that Wolf terminated plaintiff for misconduct.

¶ 58     Finally, plaintiff's "active compliance" argument is contradicted by the facts, which are not against the manifest weight of the evidence. The facts are that Attorney Wolf instructed plaintiff to "write" a portion of the motion by a date certain, not just to re-read the transcript, and the fact is that by that date plaintiff had written nothing, instead allegedly prioritizing other work. The fact Wolf later instructed plaintiff that, "You are to begin writing this section of the motion for a new trial immediately ***. Do as much as you can and email me your progress *** by 6:00 p.m. on Monday [April 10th,]" does not negate plaintiff's noncompliance with the original deadline; nor did plaintiff follow those instructions, instead asking for additional time on Monday to complete the task because she was not feeling well, which was also granted. Regardless, the Board relied on plaintiff's "total failure to even start work on the motion within the seven to nine days given to her to start work." Her completion of the work after receiving more time merely demonstrated that "she could perform it."

¶ 59     We have found that the original expectations and deadline were clearly communicated and, therefore, Attorney Wolf's instruction was reasonable. The Board's finding that plaintiff's conduct in the face of Attorney Wolf's reasonable instruction to have written material by a certain date was a "refusal" to follow his instruction as that term is used in the Act is not erroneous as a matter of law, "notwithstanding" plaintiff's alleged "prioritization" of other work, reading of the transcript, and late compliance. See *Persaud*, 2019 IL App (1st) 180964, ¶ 18. Thus, we also reject plaintiff's argument that the record shows "active compliance" rather than refusing to work on the assignment.

¶ 60     Applying the facts and the law stated above we are not left with the firm conviction that a mistake was made in the Board's determination that Wolf terminated plaintiff for misconduct. Attorney Wolf gave plaintiff a reasonable instruction in that it was clear enough for plaintiff to

know how to comply and that she could face consequences for noncompliance, and the instruction related to her work; plaintiff's failure to follow Attorney Wolf's instruction, to have a section of a motion written by a date certain, for reasons other than lack of training, ability, or danger, specifically plaintiff's choices on how to proceed with the instruction, is a refusal to obey the reasonable instruction within the meaning of the Act; and these facts satisfy the statutory standard for misconduct under section 602(A)(5) of the Act. The Board's determination is not clearly erroneous.

¶ 61                                    CONCLUSION

¶ 62    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

¶ 63    Circuit court judgment reversed.

¶ 64    Board decision affirmed.